**REVERSE and RENDER; and Opinion Filed December 16, 2013.**



In The

### No. 05-13-00039-CV

**CITY OF DALLAS, Appellant**
**V.**
**THOMAS A. DAVENPORT, Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-09411-K**

### OPINION

Before Justices O'Neill, Lang-Miers, and Evans
Opinion by Justice Lang-Miers

This is an interlocutory appeal from an order denying the City of Dallas's plea to the jurisdiction on Thomas A. Davenport's premise defect claim. Davenport sued the City for damages arising from personal injuries he sustained when he fell on a slippery substance in the terminal at Dallas Love Field Airport. The City argues that the trial court erred by denying its plea to the jurisdiction because it had governmental immunity from Davenport's claim. The resolution of the issues on appeal turns on whether Davenport was a licensee or an invitee at the airport. We conclude that he was a licensee, reverse the trial court's order, render judgment granting the plea to the jurisdiction, and dismiss Davenport's lawsuit.

### BACKGROUND

Davenport and his wife drove to Love Field, parked their car in one of the airport parking garages, and flew to Chicago for vacation. After returning to Dallas, they retrieved their luggage

from the baggage claim area and went down an escalator to an underground walkway that led to the airport parking garage. Davenport got off the escalator, took several steps, and then slipped on an orange liquid substance on the floor and fell. He broke his right wrist and sustained other injuries requiring medical treatment. There were no signs or other warnings posted near the spill to alert Davenport or anyone else about the slippery substance on the floor.

Davenport sued the City for damages under the Texas Tort Claims Act and alleged that the City waived its governmental immunity. Davenport alleged that he was an invitee at the airport because he paid for use of the premises by purchasing an airline ticket and paying to park his car in the airport parking garage. He alleged that the duty the City owed him as an invitee was to maintain the premises in a safe condition; the City knew or should have known of the dangerous condition on the floor prior to his fall; the City failed to warn him about the dangerous condition; the City failed to remove or correct the dangerous condition; and the City's negligence proximately caused the injuries he sustained in the fall.

The City filed a plea to the jurisdiction arguing that Davenport was a licensee and not an invitee because the area in the terminal where Davenport fell was open to the public and did not require the public to pay a fee to enter and access the area. The City argued that, as a licensee, and to establish waiver, Davenport must prove that the City had actual knowledge that the substance was on the floor. It contended that the evidence was undisputed that the City did not have actual knowledge.

Davenport responded that he was an invitee because he paid for use of the airport premises and that "'premises' includes real property and anything growing on it, attached to it or erected on it (e.g., trees, streets, roads, bridges, sidewalks, buildings, etc.)." He argued that the airport parking garage was part of the "premises." Davenport also argued that the City waived governmental immunity "when it failed to perform its governmental function of maintaining its

–2–

airport" by correcting the "hazardous condition created by the liquid spill in its airport within a reasonable time after the condition was created." Davenport attached his affidavit as evidence to support his response. He also attached excerpts from the deposition of an eyewitness, Korey Beard. Beard testified that he was at the airport to pick up his son who was arriving on a plane. He testified that he parked in the airport parking garage, but did not purchase an airline ticket. He saw the substance on the floor as he approached the escalator from the underground walkway, but he did not report it to anyone and did not see a custodian to whom he could report the spill. He said he was in the airport about 45 minutes. As he and his son were leaving, they happened to be in front of Davenport. He and his son avoided the substance on the floor as they stepped off the escalator, but Beard turned in time to see Davenport fall.

The City objected to portions of Davenport's affidavit, and the trial court sustained some of those objections. The City also argued that Davenport's own evidence—the testimony of the eyewitness, Beard—established that a fee was not required for use of the premises where Davenport fell because Beard had not purchased an airline ticket and was in that same area.

On the day of the hearing on the City's plea to the jurisdiction, Davenport filed a supplemental response in which he added the argument that he paid to use the airport premises because the City collected a Passenger Facility Charge (PFC) on each airplane ticket to develop portions of Love Field. The court gave the City an opportunity to file a supplemental reply and later denied the City's plea without stating a basis for its ruling.

## STANDARD OF REVIEW

Governmental immunity protects cities from lawsuits for money damages. *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006). It deprives a court of subject matter jurisdiction and may be raised in a plea to the jurisdiction. *City of Houston v. Williams*, 353 S.W.3d 128, 133–34

–3–

(Tex. 2011). Whether a trial court has subject matter jurisdiction is a question of law which we review de novo. *Id.* at 133. When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties if necessary to resolve the jurisdictional issues raised. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). If the evidence raises a fact issue about jurisdiction, the issue must be resolved by the factfinder. *Id.* at 227–28. But if the relevant evidence is undisputed, or fails to raise a fact issue, the court rules on the plea as a matter of law. *Id.* at 228. We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Id.* at 228.

## APPLICABLE LAW

### Premise Defect

The Texas Tort Claims Act waives governmental immunity for personal injury "caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (West 2011). If the claim arises from a premise defect, "the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." *Id.* § 101.022(1). If the claimant pays for use of the premises, the City's duty is elevated to that owed to an invitee. *See id.*; *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992). One difference between the duty owed to a licensee and that owed to an invitee is that if the claimant is a licensee, he must prove that the City actually knew about the condition, but if the claimant is an invitee, he must prove only that the City knew or should have known about the condition. *Payne*, 838 S.W.2d at 237.

**Payment for Use of Premises**

We have said that "invitee status requires payment of a specific fee for entry onto and use of public premises[.]" *Mitchell v. City of Dallas*, 855 S.W.2d 741, 747 (Tex. App.—Dallas 1993) (payment of taxes alone not sufficient to confer invitee status on users of city park, citing *Garcia v. State*, 817 S.W.2d 741, 743 (Tex. App.—San Antonio 1991, writ denied)), *aff'd*, 870 S.W.2d 21 (Tex. 1994). To constitute a fee for use of public premises as contemplated in the Tort Claims Act, the fee must be paid specifically for entry onto and use of the premises. *Mitchell*, 855 S.W.2d at 747. For example, a rental fee paid to a city for a wedding reception dinner in a city park after closing hours was a fee for use of the park. *Sullivan v. City of Fort Worth*, No. 02-10-00223-CV, 2011 WL 1902018, at *8 (Tex. App.—Fort Worth May 19, 2011, pet. denied) (mem. op.). The park was open only because it had been reserved for the wedding reception, and only wedding guests were allowed in the park for the event. *Id.* In another example, a woman who slipped and fell in the hallway of a hospital was an invitee of the hospital because her husband was a patient, she stayed in the room with her husband, and she paid for her husband's hospital stay. *M.D. Anderson Hosp. & Tumor Inst. v. Felter*, 837 S.W.2d 245, 248 (Tex. App.—Houston [1st Dist.] 1992, no writ).

But a fee that merely relates to the premises is not sufficient under the Tort Claims Act to constitute payment for use of the premises. In a case with facts similar to this case, the court concluded that a person who fell in the airport terminal had not paid for use of the terminal in the area where she fell even though she paid to park her car in the airport parking garage. *Churchman v. City of Houston*, No. 01-96-00211-CV, 1996 WL 544250, at *2–3 (Tex. App.—Houston [14th Dist.] Sept. 26, 1996, writ denied) (not designated for publication). The court said that paying to park in the airport parking garage was payment for use of the parking garage, not the terminal. *Id.* *See also State Dep't of Highways & Pub. Transp. v. Kitchen*, 867 S.W.2d 784,

786–87 (Tex. 1993) (payment of vehicle registration and licensing fees did not constitute payment for use of the highway); *Clay v. City of Fort Worth*, 90 S.W.3d 414, 417 (Tex. App.—Austin 2002, no pet.) (city did not waive governmental immunity for injuries sustained by telephone company employee at public events facility because revenue-sharing relationship between city and telephone company, while related to premises, was not fee for use of the premises); *Simpson v. Harris Cnty.*, 951 S.W.2d 251, 253 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (payment of filing fee did not constitute payment for use of courthouse); *Garcia*, 817 S.W.2d at 743 (payment of general licensing fees and fuel taxes did not elevate truck driver's status to invitee on public highways).

## DID DAVENPORT PAY FOR USE OF PREMISES?

### Purchasing Airline Ticket and Paying to Park Car

To determine if immunity was waived, we first address whether Davenport was an invitee or a licensee. Davenport alleged that he was an invitee because he paid for use of the premises by purchasing an airline ticket and paying to park his car in the airport parking garage. In its plea to the jurisdiction, however, the City alleged and attached evidence supporting its contention that Davenport was a licensee because the area in the terminal where Davenport fell did not require payment of a fee for entry. Terry L. Mitchell, the City's Assistant Director of Aviation-Operations, testified by affidavit that "[t]he baggage claim area and walkway leading from the baggage claim area to the parking garage is part of the airport terminal that is open to the public. The payment of a fee is not required for entry into the baggage claim area and airport terminal walkway leading from the baggage claim area to the parking garage. Members of the public are not required to show an airline ticket before being allowed access to the baggage area and airport terminal walkway leading from the baggage claim area to the parking garage."

Davenport contends that the City "is attempting to dissect the Love Field Airport facilities," and that he "provided overwhelming evidence to support his allegations that he paid for the use of the City's airport facilities." He contends that his "use of the City's interrelated facilities, including the parking garage, the walkway inside the terminal, the secured portion of the terminal, the unsecured portion of the terminal, the baggage claim area, was necessary to accomplish his travel." And he cites our opinion in *City of Plano v. Homoky*, 294 S.W.3d 809, 816 (Tex. App.—Dallas 2009, no pet.), to support his argument that the City is wrongly attempting to "dissect" its premises. We disagree that *Homoky* controls our analysis.

In that case, Homoky had been playing golf at a city-owned golf course and tripped and fell as she walked through the clubhouse. *Id*. at 812. She sued the city under the Tort Claims Act asserting liability based on the city's performance of a proprietary function or, alternatively on a premise defect. *Id*. The city argued that the golf course was a governmental function, not a proprietary function. *Id*. The trial court denied the city's plea to the jurisdiction and the city appealed the denial. *Id*. On appeal, the city argued that the clubhouse was part of its operation of the golf course, which was a governmental function. *Id*. at 814. In contrast, Homoky contended that although the golf course itself might be a governmental function, the clubhouse was a proprietary function. *Id*. at 815. We said that "[t]he dichotomy of governmental and proprietary functions proposed by Homoky . . . impermissibly dissects the City's operation." *Id*. In other words, we concluded that the premises—the golf course and clubhouse—could not be "dissected" into both governmental and proprietary functions.

Here, Davenport does not argue that the City is attempting to "dissect" the airport premises into both governmental and proprietary functions, but that the City is attempting to "dissect" the premises (i.e., by terminal and parking garage) in its argument that he did not raise a material issue of fact about whether he paid for use of the area where he fell.

The undisputed evidence was that people could be in this part of the airport even if they had not paid to park or purchased an airline ticket. But, under Davenport's analysis, the City would owe a lesser duty to people in the area where Davenport fell if they had not purchased an airline ticket or had not paid to park in the airport parking garage. We see "no rational basis," however, for distinguishing between people in this part of the airport on the basis of whether they purchased an airline ticket, paid to park their car in the airport parking garage, or arrived at the airport by cab or other means. *See Garcia*, 817 S.W.2d at 743.

We conclude that Davenport's payment to park his car in the airport parking garage was not a fee he paid specifically for entry onto and use of the terminal in the area where he fell. *Churchman*, 1996 WL 544250, at *2–3; *see Mitchell*, 855 S.W.2d at 747. We further conclude that Davenport's purchase of an airline ticket was not a fee he paid specifically for entry onto and use of the terminal in the area where he fell. *See Mitchell*, 855 S.W.2d at 747; *see also Churchman*, 1996 WL 544250, at *2–3.

**Paying PFC**

Davenport also argued below that he paid for use of the premises because the City collects a PFC "up to $4.50 for every boarded passenger at commercial airports controlled by public agencies." He offered evidence that the City "'ordained' PFCs at Love Field Airport" four months before he fell in 2009 and that the fees collected were to be spent on "projects at the Love Field Airport." In response, the City argued that payment of a PFC is not payment for use of the premises and that Davenport presented no evidence that he actually paid a PFC. The City also presented affidavit testimony from Kenneth Gwyn, the Assistant Director of Aviation, who stated that the walkway area where Davenport fell was completed several years before Davenport fell and that no PFCs were used for that area. Davenport did not offer any evidence controverting Gwyn's testimony or that he paid a PFC. As a result, Davenport did not raise a

material issue of fact about whether a PFC, if he paid one, was paid for use of the premises where he fell.

In summary, we conclude that Davenport was a licensee at the airport.

### ACTUAL KNOWLEDGE OF DANGEROUS CONDITION

As a licensee, and to show the City waived immunity, Davenport had to show that the City had actual knowledge of the spill. "Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge[.]" *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008) (per curiam).

In its plea to the jurisdiction, the City challenged Davenport's ability to plead and prove that the City had actual knowledge of the spill. The City produced evidence showing that neither the eyewitness nor anyone else reported the spill and that the eyewitness did not see a custodian in the area at any time. Davenport did not produce any evidence controverting the City's evidence and, in fact, agreed during oral argument that the City did not have actual knowledge that the substance was on the floor when he fell. Without a showing that the City actually knew that the substance was on the floor, Davenport did not establish a waiver of governmental immunity.

### CONCLUSION

We conclude that the trial court erred by denying the City's plea to the jurisdiction. We reverse the order denying the City's plea to the jurisdiction and render judgment granting the plea to the jurisdiction and dismissing Davenport's lawsuit.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

130039F.P05

–9–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CITY OF DALLAS, Appellant

No. 05-13-00039-CV  V.

THOMAS A. DAVENPORT, Appellee

On Appeal from the 192nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-09411-K.
Opinion delivered by Justice Lang-Miers,
Justices O'Neill and Evans participating.

In accordance with this Court's opinion of this date, the order of the trial court is **REVERSED** and judgment is **RENDERED** granting appellant City of Dallas's plea to the jurisdiction and dismissing appellee Thomas A. Davenport's lawsuit.

It is **ORDERED** that appellant City of Dallas recover its costs of this appeal from appellee Thomas A. Davenport.

Judgment entered this 16th day of November, 2013.

/Elizabeth Lang-Miers/

ELIZABETH LANG-MIERS
JUSTICE