

NUMBER 13-16-00695-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

CITY OF HIDALGO, TEXAS AND
THE CITY OF HIDALGO, TEXAS
MUNICIPAL FACILITIES CORPORATION,                    Appellants,

v.

MARY LEAH HODGE,                                      Appellee.

On appeal from the 332nd District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Contreras and Hinojosa
Memorandum Opinion by Chief Justice Valdez**

Appellants, the City of Hidalgo (the "City") and City of Hidalgo Texas Municipal

Facilities Corporation ("CHMFC") appeal the trial court's denial of their plea to the

jurisdiction. By two issues, appellants contend that the trial court should have granted

their plea to the jurisdiction because appellee, Mary Leah Hodge, failed to raise a material issue of fact necessary to confer jurisdiction on the trial court. We affirm.

## I. BACKGROUND

At a concert event outside of the State Farm Arena during an annual event called Borderfest, Hodge stepped into a hole and was injured. Hodge sued the City and CHMFC under a premises liability theory. Claiming immunity, appellants sought dismissal of the claim via a plea to the jurisdiction. The trial court denied the plea. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West, Westlaw through 2017 1st C.S.).

## II. STANDARD OF REVIEW

The purpose of a plea to the jurisdiction is to "defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). A challenge to the trial court's subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The plaintiff first bears the burden to plead facts establishing jurisdiction. *Id.* We will, when necessary, consider relevant evidence submitted by the parties to resolve the jurisdictional dispute. *Id.* at 227 (citing *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555). However, we will consider only the evidence relevant to the jurisdictional question. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. "[I]f the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issues, the trial court rules on the plea to the jurisdiction as a matter of law." *Miranda*, 133 S.W.3d at 228.

We take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in favor of the non-movant. *City of Waco*

*v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009). In the plea to the jurisdiction context, a defendant cannot simply deny the existence of jurisdictional facts and force the plaintiff to raise a fact issue. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 314 S.W.3d 548, 553–554 (Tex. App.—Corpus Christi 2010) *rev'd in part on other grounds*, 372 S.W.3d 629, 645 (Tex. 2012).

### III.    APPLICABLE LAW

Unless the Legislature expressly waives it, local governmental entities have absolute immunity from suit. *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011). When the legislature provides for a waiver of immunity from suit, it must do so with clear and unambiguous language, and any ambiguity must be resolved in favor of retaining immunity. *Tooke v. City of Mexia*, 197 S.W.3d 325, 328–29, 333 (Tex. 2006); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003).

"[A] governmental unit is immune from suit unless the [Texas] Tort Claims Act [("TTCA")] expressly waives immunity, which it does in," among other situations, suits involving premises defects. *See Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016). Section 101.021(2) of the TTCA "waives governmental immunity for personal injuries caused by a condition on property 'if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.'" *City of El Paso v. Viel*, 523 S.W.3d 876, 891 (Tex. App.—El Paso 2017, no pet.) (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (West, Westlaw through 2017 1st C.S.)). Generally, for such conditions, a governmental unit owes only the duty that a private person owes to a licensee on private property. *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a) (West, Westlaw through 2017 1st C.S.)). However, "[i]f the claimant pays for use of the

3

premises, the City's duty is elevated to that owed to an invitee." *Id.* (citing *City of Dallas v. Davenport*, 418 S.W.3d 844, 847 (Tex. App.—Dallas 2013, no pet.)).

> At common law, a licensee is defined as a person who, for his or her own convenience, pleasure, or benefit, enters the premises with the express or implied permission of the owner. To a licensee, a premises owner owes a duty not to injure "by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not."

> . . . .

> At common law, an invitee is a person who enters the premises of another in answer to an express or implied invitation from the owner or occupier for their mutual benefit. To an invitee, a landowner owes "a duty to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." An invitee need only prove that the owner knew or reasonably should have known of a dangerous condition, whereas a licensee must prove that the premises owner actually knew of the dangerous condition.

*Id.* (internal citations omitted).

## IV.    INVITEE STATUS

By their first issue, appellants contend that Hodge is not an invitee because she could not show that appellants had possession or control of the premises, Hodge did not pay appellants to enter the premises, and the hole was not a special defect.

## A.    Control of Premises

First, appellants argue that the trial court should have granted the plea to the jurisdiction because Hodge did not establish that appellants were in possession or control of the premises at the time of her fall. Specifically, the City argues that it leased its premises to the Borderfest Association and that Borderfest Association was actually in custody and control of the premises when Hodge fell.

4

In its plea to the jurisdiction, the City claimed that there was an "understanding" that the City had leased the premises to the Borderfest Association, and therefore, as a landlord it owed no duty to Hodge. Hodge responds on appeal that there is no evidence that the City leased the premises to the Borderfest Association.

Generally, landlord (lessor) owes no duty to a tenant (lessee) or a tenant's invitees for dangerous conditions on leased property. *Shell Oil v. Kahn*, 138 S.W.3d 288, 296 (Tex. 2004). "This general rule stems from the notion that a lessor relinquishes possession or occupancy of the premises to the lessee." *Johnson Cty. Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996). There are several exceptions to this general rule, including an exception for injuries caused by defects on the premises that remain under the lessor's control. *Id.* "The relevant inquiry is whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it." *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002). "Control can be proven by either a contractual agreement expressly assigning the right of control or an actual exercise of control." *Cohen v. Landry's Inc.*, 442 S.W.3d 818, 824 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see also Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002).

On appeal, appellants do not clearly explain how the alleged lease with the Borderfest Association came into existence. And, appellants have conceded that there is no written agreement leasing the premises to the Borderfest Association. Hodge attached evidence to her response to appellants' plea to the jurisdiction showing that the City owns the premises where she fell. In addition, Hodge pointed to evidence that: (1) the Borderfest Association operational guidelines for 2014 indicate that "maintenance and

5

cleanup will be handled by City crews"; (2) the City Manager routinely held meetings with the employees assigned to work at and in connection with Borderfest and directed city personnel on the placement of "food booths, trash, bleachers, and all other work needed for Borderfest"; and (3) the City's employees worked at Borderfest, determined where the bleachers would be set, set up the bleachers, removed trash from the premises each night during the four-day festival, inspected the grounds around the bleachers, covered the hole where Hodge tripped with river sand shortly after the incident, and were responsible for overall maintenance of the State Farm Arena and grounds. We conclude that under the appropriate standard of review, this evidence sufficiently established as a matter of law that the City had control of the premises at the time Hodge fell. *See Gunn v. Harris Methodist Hosp.*, 887 S.W.2d 248, 252 (Tex. App.—Fort Worth 1994, writ denied) (defining control as contemplated by a premises liability claim to include the power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee); *see also Cohen*, 442 S.W.3d at 824 ("[E]vidence of subsequent remedial measures, although inadmissible as to negligence, is admissible to prove control when that issue is controverted.").

Nonetheless, the City claims that it provided evidence that the Borderfest Association made decisions regarding what the city employees would do in preparation for the event and that the Borderfest Association directed the actions of the City's employees. However, we cannot conclude that this evidence shows that there was an implied lease of the premises to the Borderfest Association especially in light of the evidence stated above, which supports a conclusion that the City maintained control of the premises. For that reason, we conclude that there is no evidence that the City

relinquished possession or occupancy to the Borderfest Association. *See Johnson Cty. Sheriff's Posse, Inc.*, 926 S.W.2d at 285. Accordingly, because Hodge's evidence sufficiently shows that the City owned the premises and that the City was in control of the premises, and given that the City has produced no written lease nor provided any evidence of an implied lease agreement, we conclude that the trial court did not err in denying the City's plea to the jurisdiction on these grounds. *See Miranda*, 133 S.W.3d at 228 (explaining that the governmental unit must meet the summary judgment standard of proof for its assertion that the trial court lacks jurisdiction).

**B.    Payment for Use or Entry of Premises**

Next, appellants argue that because Hodge paid an entrance fee to the Borderfest Association, as opposed to paying a fee to appellants, she is not an invitee pursuant to section 101.022(a) but was instead a licensee. Hodge responds that there is no requirement in the statute that she pay the party that owned, occupied and/or controlled the premises where the incident took place.

As previously stated, the governmental unit owes a person injured on its property the duty owed to a licensee unless the claimant pays for use of the premises. TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a). The TTCA contemplates that the fee be specifically paid for entry onto and use of the premises. *City of Dallas v. Davenport*, 418 S.W.3d 844, 847 (Tex. App.—Dallas 2013, no pet.). Here, it is undisputed that Hodge paid an entry fee for use of the premises on the day that she was injured. The City cites no authority, and we find none, requiring the City itself to collect and receive the entry fee charged. As Hodge points out, the statute itself makes no such distinction. It states, "the governmental unit owes to the claimant only the duty that a private person owes to a

7

licensee on private property, unless the claimant pays for the use of the premises." TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a).

In *Sullivan v. City of Fort Worth*, the court of appeals held that the Sullivans had paid for use of the premises even though they were merely guests at a wedding reception. *Sullivan v. City of Fort Worth*, No. 02–10–00223–CV, 2011 WL 1902018, at *1 (Tex. App.—Fort Worth May 19, 2011, pet. denied) (mem. op. on reh'g). The court of appeals explained that the host of the reception, Jeremy Tekell, paid a fee for the admission of up to 250 guests, and "[h]ad Mr. Tekell not paid the rental fee to lease the Garden, the Garden would have been closed to everyone including the Sullivans." *Id.* at *8. "It was Mr. Tekell's rental fee which allowed the Sullivans' use of the premises" on the night of the injury. *Id.* Like the Sullivans, if Hodge had not paid the fee to enter the City's premises on the day she was injured, she would not have been allowed to enter. It was Hodge's entry fee which allowed her the use of the premises.

In addition, in *Dallas-Fort Worth International Airport Public Facility Improvement Corp. v. Banks*, the court of appeals concluded that a question of fact concerning the claimant's status as an invitee existed because the claimant was allowed to enter the area of the airport where she was injured only because she purchased an airline ticket. *Dallas–Fort Worth Int'l Airport Pub. Facility Improvement Corp. v. Banks*, No. 02–09–176–CV, 2010 WL 87865, at *4 (Tex. App.—Fort Worth Jan. 7, 2010, pet. denied) (mem. op.). There was nothing indicating that the claimant purchased her airline ticket from the governmental unit. *See id.* However, the focus of the court's analysis is on whether the claimant paid for entry onto the premises. *See id.* Accordingly, we are persuaded by this authority that our analysis should focus on whether Hodge paid for entry onto the

8

premises and not on whether the City received the money. *See id.* Therefore, we conclude that the trial court did not err by denying the City's plea to the jurisdiction on that ground.[1] We overrule the City's first issue.[2]

## V. PREMISES LIABILITY

By their second issue, appellants contend that even if invitee status applies, neither appellant had actual or constructive knowledge of any defect on the premises.

First, appellants argue that because Hodge was a licensee, appellants owed her a duty not to injure her by willful, wanton or grossly negligent conduct and to use ordinary care either to warn Hodge of, or to make reasonably safe, a dangerous condition of which appellants were aware and Hodge was not. According to appellants, Hodge has presented no evidence to even raise a question of fact regarding whether it caused her injury by willful, wanton, or grossly negligent conduct or that appellants were aware of the allegedly dangerous condition. We have concluded that the City did not establish as a matter of law that Hodge is a licensee; therefore, we need not address this argument.

Next, appellants argue that even assuming that Hodge is an invitee, neither the City nor the CHMFC had actual or constructive knowledge of any defect. Hodge responds that as an invitee she need only show that appellants knew or should have known of the

---

[1] We note that the City premises its argument in part on its claim that it leased the premises to the Borderfest Association. However, we have already concluded that argument lacks merit.

[2] We need not address appellants' argument that the hole was not a special defect because we have already determined that a fact issue exists regarding whether Hodge was an invitee under section 101.022(a). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.022 (a), (b) (West, Westlaw through 2017 1st C.S.) (establishing that a claimant is an invitee if either (1) "the claim arises from a premises defect" and the claimant pays for the use of the premises or (2) the governmental unit failed to warn of special defects such as excavations or obstructions on highways, roads, or streets or failed to ward of the absence, condition, or malfunction of traffic signs, signals, or warning devices).

9

danger and that proof of constructive knowledge requires only that the condition existed long enough to have been discovered through reasonable inspection.

To prevail, an invitee must show that the occupier or owner had actual or constructive knowledge of a condition on the premises, the condition posed an unreasonable risk of harm, the owner/occupier did not exercise reasonable care to reduce or eliminate the risk, and the owner/occupier's failure to use such care proximately caused the plaintiff's injury. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983). "[A]n occupier's liability to an invitee depends on whether he acted reasonably in light of what he knew or should have known about the risks accompanying a premises condition, not on whether a specific set of facts or a specific breach of duty is established." *Id.* at 295. The owner/operator has constructive knowledge of any premises defects or other dangerous conditions that a reasonably careful inspection would reveal. *Id.*

Hodge presented evidence that the hole was circular and about the size of a large dinner plate and that the hole was large enough to contain a men's size 13 or 14 shoe. Evidence was presented that the hole was so deep the emergency service worker who treated Hodge was able to place his knee inside the hole. In addition, the hole was one step away from the bleachers and in front of the bleachers requiring a person to step directly onto the hole before climbing the bleachers. Hodge's husband testified that the hole had clearly been there for some substantial time based on its appearance. In addition, evidence was presented that City employees inspected the ground around each bleacher. Moreover, there is some evidence that the hole is man-made and that the City was solely responsible for setting up the bleachers and maintaining the grounds.

10

Viewing this evidence in the light most favorable to Hodge, as we must, we conclude that a question of fact exists regarding whether appellants had constructive or actual knowledge of the hole. We overrule appellants' second issue.

## VI. CHMFC

By a sub-issue to their second issue, appellants contend that Hodge presented no evidence that CHMFC owned the premises; therefore, it proved as a matter of law that it owed her no duty, either as an owner or the party in possession or control of the premises.[3] In her brief, Hodge cites conflicting evidence of ownership of the premises. Appellants respond that CHMFC transferred its interest to the City prior to this incident.

In interrogatories attached to Hodge's response to appellants' plea to the jurisdiction, CHMFC stated that it had provided the building and grounds for Borderfest the year that Hodge was injured and that it had been reimbursed for its labor costs and other expenses by the Borderfest Association. In addition, as appellants acknowledge, the former City Manager testified that CHMFC was still the owner of the premises where Hodge was injured. Viewing the evidence in the light most favorable to Hodge, we conclude that a question of fact exists regarding whether CHMFC still owned the premises. We overrule appellants' sub-issue to their second issue.

## VII. CONCLUSION

We affirm the trial court's judgment.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
18th day of January, 2018.

---

[3] Appellants make no other argument regarding whether we have jurisdiction over CHMFC.

11