

# NUMBER 13-23-00163-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CITY OF HIDALGO –
TEXAS MUNICIPAL
FACILITIES CORPORATION,                                        Appellant,

v.

LAURA RODRIGUEZ,                                              Appellee.

On appeal from the 332nd District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Memorandum Opinion by Justice Benavides**

The City of Hidalgo – Texas Municipal Facilities Corporation (Municipal

Corporation) appeals from the denial of its plea to the jurisdiction regarding appellee

Laura Rodriguez's premises liability claim. By a single issue with multiple subparts, the

Municipal Corporation contends that Rodriguez's claim is not viable under the Texas Tort Claims Act's (TTCA) waiver of immunity because: (1) Rodriguez failed to identify a defective condition; (2) the only possible condition was not defective; (3) Rodriguez is not entitled to invitee status; and (4) the Municipal Corporation did not have actual knowledge of a defective condition. We affirm.

## I.     BACKGROUND

The Municipal Corporation is a nonprofit local government corporation formed by the City of Hidalgo under Subchapter D of Chapter 431, Texas Transportation Code. The Municipal Corporation owns a large event center formerly known as State Farm Arena (the Arena).[1] In the summer of 2018, Rodriguez's employer, La Joya Independent School District (the District), rented the Arena to hold its annual convocation celebrating the upcoming school year. Every employee in the District—teachers, administrators, and staff—was required to attend the event, which occurred on a Wednesday afternoon. During her deposition, Rodriguez estimated that the District employs between one and two thousand people. The event was not open to the public, and security was provided by the District's police department and Arena personnel.

The Arena premises includes surrounding parking lots and a sidewalk that abuts the Arena and leads to the main entrance. A person attending an event at the Arena must cross this sidewalk to enter the facility. According to her live petition, Rodriguez parked her car in the Arena parking lot and was walking on the sidewalk when she stepped in a "pothole," causing her to trip and fall and injure her knee. During her deposition, Rodriguez

---

[1] The event center is currently named Payne Arena, but we will refer to it by the name used in the pleadings.

similarly described the condition in the sidewalk as "a pothole, round thing." She acknowledged that she did not see the alleged defect at the time she fell and thus agreed that she could not be certain that it caused her fall. However, Rodriguez was confident that "something" caused her to trip and fall, and because the alleged defect was the only anomaly nearby, she concluded that it must have been the cause. During discovery, the Municipal Corporation produced a photograph of a condition in the sidewalk near the area where Rodriguez fell:



The Municipal Corporation's chief engineer, Santos Farias, identified this as "an access point to a sewage overflow connection." Farias had no knowledge of anyone ever tripping over this access point in the past. Similarly, the Arena's general manager, Eric Trevino, signed an unsworn letter affirming there had not been "any reported incidents" in the area where Rodriguez allegedly fell.

The Municipal Corporation filed two pleas to the jurisdiction in this case. The first plea operated under the assumption that the above photograph depicts the allegedly dangerous condition. Up to that point, Rodriguez had described the allegedly dangerous

condition as "a protruding steel plate cover" through several iterations of her pleadings. After the first plea was filed, Rodriguez amended her pleading and changed the description to a "pothole." She also filed a response to the first plea arguing, in part, that any jurisdictional arguments referring to her prior description of the dangerous condition were now "moot." This led the Municipal Corporation to file a second plea to the jurisdiction arguing, in part, that Rodriguez could not even identify a dangerous condition. At the jurisdictional hearing, Rodriguez's counsel confirmed that the above photograph depicts the condition that allegedly caused his client to trip and fall.

The trial court denied the plea, and this interlocutory appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II. STANDARD OF REVIEW & APPLICABLE LAW

Subject matter jurisdiction is essential to a court's authority to decide a case. *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (orig. proceeding) (per curiam) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). Whether a trial court has subject matter jurisdiction over a plaintiff's claim is generally a question of law we review de novo. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016).

Sovereign immunity is a common-law doctrine that protects the State and its agencies from lawsuits for money damages and deprives a trial court of subject matter jurisdiction over the plaintiff's claims. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008). Governmental immunity offers the same protections for the State's political subdivisions, including its cities. *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 392 (Tex. 2022) (first citing *Hillman v. Nueces County*, 579 S.W.3d 354,

4

357 (Tex. 2019); and then citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)).

The TTCA provides a limited waiver of immunity for certain tort claims against governmental entities, including personal injury caused by a condition or use of real property "if the governmental unit would, if it were a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). Ordinarily, when "a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property." *Id.* § 101.022(a). "That duty requires that a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not." *Sampson*, 500 S.W.3d at 387 (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)).

However, "[i]f the claimant pays for use of the premises, the City's duty is elevated to that owed to an invitee." *City of El Paso v. Viel*, 523 S.W.3d 876, 891 (Tex. App.—El Paso 2017, no pet.) (citing *City of Dallas v. Davenport*, 418 S.W.3d 844, 847 (Tex. App.—Dallas 2013, no pet.)); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a). A landowner owes an invitee "a duty to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015). An invitee need only prove that the owner knew or reasonably should have known of a dangerous condition, whereas a licensee must prove that the premises owner actually knew of the

dangerous condition. *Id.*

It is the plaintiff's initial burden to plead facts that affirmatively demonstrate the trial court's subject matter jurisdiction, and we review this question de novo as a matter of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally and look to the plaintiff's intent. *Id.* If the pleadings are deficient but do not demonstrate an incurable defect, then the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend their pleadings. *Id.* at 226–27. Conversely, if it becomes clear that the plaintiff cannot allege a viable waiver of immunity, then the suit should simply be dismissed. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007).

A governmental defendant may challenge the existence of jurisdictional facts and support its argument with evidence. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). In such instances, the analysis "mirrors that of a traditional summary judgment." *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012)). When a governmental entity produces evidence establishing the absence of a jurisdictional fact, the burden shifts to the plaintiff to raise a genuine issue of material fact for the jury to resolve; otherwise, the trial court should rule on the jurisdictional question as a matter of law. *Miranda*, 133 S.W.3d at 228. "[I]n evaluating the parties' evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528–29 (Tex. 2022) (citing *Miranda*, 133 S.W.3d at 228).

6

### III. IDENTITY OF THE DEFECTIVE CONDITION

As a threshold matter, the Municipal Corporation argues by its first sub-issue that Rodriguez failed to affirmatively identify a dangerous condition in the sidewalk. The Municipal Corporation contends that Rodriguez changed the description of the dangerous condition in her pleadings from "a protruding steel plate cover" to a "pothole" to avoid dismissal. According to the Municipal Corporation, Rodriguez has failed to satisfy her burden to plead and prove a waiver of immunity because it is not clear what condition Rodriguez is even alleging to be defective. However, Rodriguez's amended pleading is consistent with the description she previously provided in her deposition: "a pothole, round thing." And whatever disagreements the parties may have about the proper description of the alleged defect, Rodriguez has now unequivocally declared that the above photograph, depicting what the Municipal Corporation describes as a "sewage overflow connection point," is the allegedly dangerous condition. Thus, we disagree with the Municipal Corporation that Rodriguez has failed to identify through her pleadings or jurisdictional evidence an allegedly dangerous condition.[2]

Relatedly, the Municipal Corporation suggests that Rodriguez cannot prove causation because Rodriguez testified that she did not see the alleged defect at the time of her fall. "Circumstantial evidence may prove a material fact, but it must transcend mere suspicion, and the material fact must be a reasonable inference from the known circumstances." *Harwood v. Hines Ints. Ltd. P'ship*, 73 S.W.3d 450, 453 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (reversing summary judgment granted in favor of

---

[2] We will adopt the Municipal Corporation's description of the condition.

7

premises owner because circumstantial evidence raised a genuine issue of material fact as to causation in a trip and fall case). Here, Rodriguez testified that she was certain that she tripped over "something" in the sidewalk, and because the connection point was the only anomaly in the area, she concluded that it was the cause of her fall. Viewing the evidence in the light most favorable to Rodriguez, we conclude that a jury could reasonably infer from the circumstances of her fall that the connection point was the proximate cause of her injury. *See id.* The Municipal Corporation's first sub-issue is overruled.

## IV.   CONNECTION POINT AS A DEFECTIVE CONDITION

Rodriguez alleges in her petition that the connection point created a tripping hazard in the sidewalk that was unreasonably dangerous. *See Christ v. Tex. Dep't of Transp.*, 664 S.W.3d 82, 87 (Tex. 2023) ("Absent willful, wanton, or grossly negligent conduct, a plaintiff asserting a premises defect under the [TTCA], whether treated as a licensee or invitee, must prove that 'a condition of the premises created an unreasonable risk of harm' to the claimant." (quoting *Payne*, 838 S.W.2d at 237)). The Municipal Corporation argues by its second sub-issue that the connection point "cannot be a defect under the law as it has a specific purpose[,] and [Rodriguez] has neither pled nor produced any evidence to the contrary."

"A condition creates an unreasonable risk of harm if there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Id.* (internal quotation marks omitted) (quoting *County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002)). "Whether a condition is

unreasonably dangerous is ordinarily a fact question." *Id.* "In determining whether a condition is unreasonably dangerous, we consider several factors including 'whether the relevant condition was clearly marked, its size, whether it had previously caused injuries or generated complaints, whether it substantially differed from conditions in the same class of objects, and whether it was naturally occurring.'" *Id.* (quoting *United Supermarkets, LLC v. McIntire*, 646 S.W.3d 800, 803 (Tex. 2022) (per curiam)). We also consider "whether the condition met applicable safety standards." *Id.*

As the party challenging the existence of jurisdictional facts, it was incumbent upon the Municipal Corporation to prove that the connection point was not unreasonably dangerous as a matter of law. *See Miranda*, 133 S.W.3d at 228. The jurisdictional record contains scant evidence about the connection point. The Municipal Corporation provided a single photograph of the condition, and its chief engineer identified it as a sewage overflow connection point. But there is no evidence in the record about whether it is common to place a sewage overflow connection point in the middle of a sidewalk or whether this particular connection point complies with applicable safety standards. *See Christ*, 664 S.W.3d at 87. Moreover, the Municipal Corporation has not attempted to compare the connection point to any "conditions in the same class of object." *See id.*

As for the photograph, based on the quality and angle of the image, it is difficult to discern any details about the qualities of the condition. From what we can see, it appears that the connection point is below the surface of the sidewalk, creating a lip around the edge of the connection point. There also appears to be at least one protruding bolt that fastens the cover of the connection point. The Municipal Corporation has failed to provide

us with any measurements that would give texture to this two-dimensional image. *See, e.g.*, *United Supermarkets*, 646 S.W.3d at 803 (finding a divot in a parking lot that "measured less than an inch deep" was not unreasonably dangerous as a matter of law because the "small pavement defect[] . . . was profoundly *ordinary*").

The Municipal Corporation's engineer said in a response to an interrogatory that he had no personal knowledge of anyone tripping over the connection point prior to Rodriguez. The Municipal Corporation's general manager made a similar statement in an unsworn letter. While a lack of reported incidents is normally some evidence that a condition is not unreasonably dangerous, *see Christ*, 664 S.W.3d at 87, the value of these statements is diminished because the Municipal Corporation has failed to place them in context. For example, there is no evidence indicating when the Arena was built, how long the connection point has been there, or how many people may have walked on that portion of the sidewalk without incident. *See Dietz v. Hill Country Rests., Inc.*, 398 S.W. 761, 767 (Tex. App.—San Antonio 2011, no pet.) (finding no evidence that defects in a sidewalk were unreasonably dangerous because premises owner provided evidence that defects had existed for more than eighteen years, tens of thousands of people had walked on the sidewalk, and plaintiff was the first person to report a fall). Based on the limited record before us and viewing the evidence in the light most favorable to Rodriguez, we find the Municipal Corporation has failed to conclusively establish that the connection point was not unreasonably dangerous as a matter of law. The Municipal Corporation's second sub-issue is overruled.

## V. INVITEE STATUS

Rodriguez alleges in her live pleading that she was an invitee at the time of her injury. It is undisputed that the District rented the Arena to host its annual convocation and that Rodriguez attended the convocation in the course and scope of her employment. The Municipal Corporation contends by its third sub-issue that Rodriguez is not entitled to invitee status because she did not directly pay for the use of the premises. The Municipal Corporation points to the plain language of the TTCA, which provides that a claimant is a licensee unless "the claimant pays for the use of the premises." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a).

Several of our sister courts have considered this argument and concluded that a direct payment is not required so long as someone paid a fee that granted the claimant access to the premises. *City of El Paso v. Viel*, 523 S.W.3d 876, 893–94 (Tex. App.—El Paso 2017, no pet.) (holding that an employee was entitled to invitee status because his employer was leasing the premises from the city); *City of Dallas v. Patrick*, 347 S.W.3d 452, 457 (Tex. App.—Dallas 2011, no pet.) (concluding that claimant was entitled to invitee status because she gained entry to the zoo through her mother's payment of a membership fee); *see also Tex. Eng'g Extension Serv. v. Gifford*, No. 10-11-00242-CV, 2012 WL 851742, at *1 (Tex. App.—Waco Mar. 14, 2012, no pet.) (mem. op.) (holding an employee was entitled to invitee status because his employer paid a fee that permitted the employee to attend a training session on the premises); *Sullivan v. City of Fort Worth*, No. 02-10-00223-CV, 2011 WL 1902018, at *8 (Tex. App.—Fort Worth May 19, 2011, pet. denied) (mem. op.) (finding that a wedding guest was entitled to invitee status

11

because the groom paid a rental fee to host the wedding at a city garden). The Municipal Corporation has not cited any cases that require a direct payment, and we have found none.

Here, the record establishes that the District rented the Arena for the express purpose of hosting a private event for its employees. Without the rental fee paid by the District, its employees, including Rodriguez, would not have been allowed to enter the Arena. Therefore, we conclude that the lack of a direct payment by Rodriguez does not preclude her from invoking invitee status. *See Viel*, 523 S.W.3d at 893–94; *Patrick*, 347 S.W.3d at 457; *see also Gifford*, 2012 WL 851742, at *1; *Sullivan*, 2011 WL 1902018, at *8.

The Municipal Corporation also contends that Rodriguez should be treated as a licensee because the accident occurred on the sidewalk rather than inside the Arena. According to the Municipal Corporation, Rodriguez's use of the sidewalk was merely incidental to any payment for the use of the Arena. Although the sidewalk is part of the Arena premises, the Municipal Corporation suggests that we differentiate between areas that are generally open and available to the public and those that are not, regardless of any fees paid for the use of the premises.

There is a split in authority amongst our sister courts on this issue. In *City of Dallas v. Davenport*, a case relied on by the Municipal Corporation, the Fifth Court of Appeals concluded that a claimant who slipped and fell in a walkway leading from a Love Field terminal to a parking garage was not entitled to invitee status even though he purchased an airline ticket and paid to park his vehicle at the airport. 418 S.W.3d 844, 846, 849 (Tex.

12

App.—Dallas 2013, no pet.). The court noted the "undisputed evidence" that the claimant fell in an area of the airport that was equally accessible by people who had not purchased an airline ticket or paid to park their car in the airport parking garage. *Id.* at 849. Based on this fact, the court concluded that there was no reason to distinguish between the two groups of people,—i.e., those who paid and those who did not,—"in this part of the airport." *Id.*

On the other hand, in *City of Fort Worth v. Posey*, a case with facts similar to this case, the Second Court of Appeals concluded that a claimant who slipped and fell on a public walkway between a parking lot and the city-owned Will Rogers Memorial Coliseum was entitled to invitee status. 593 S.W.3d 924, 927 (Tex. App.—Fort Worth 2020, no pet.). The claimant paid separate fees to park in the coliseum parking lot and to enter the coliseum for a gift fair. *Id.* at 927–28. Like the Municipal Corporation, the city argued that the case was analogous to *Davenport* because the accident occurred on a public walkway. *Id.* at 928. The Second Court of Appeals disagreed with the analysis in *Davenport*, explaining that the plain text of § 101.022(a) requires a different outcome:

> The text of the statute makes a person's status dependent on whether she has paid for use of the premises. It says nothing of whether other members of the public must also pay for use of the same premises. And the statute does not say that the claimant must pay for exclusive or nonpublic use of the premises. The public's access to the same space is immaterial. Rather, according to the statute's plain language, a person is entitled to invitee status if the person paid to use the premises, regardless of whether other members of the public might also be present without paying.

*Id.* at 929; *see also City of San Antonio v. Realme*, No. 04-20-00119-CV, 2021 WL 1009330, at *4–5 (Tex. App.—San Antonio Mar. 17, 2021, pet. denied) (mem. op.) (examining the approaches in *Davenport* and *Posey* and adopting the latter). The court

13

also said that its approach is consistent with the common law because an entrant's status is largely dependent on the entrant's purpose in coming to the property. *Id.* at 929–30 (collecting cases); *see Sampson*, 500 S.W.3d at 387 (looking to the common law to interpret § 101.022(a) because "the Legislature linked the applicable duty under section 101.022(a) . . . to the common law"). Thus, the court noted, "people on the same public premises might have different status depending on their purposes." *Posey*, 593 S.W.3d at 930 (providing illustration of how an invitee, licensee, and trespasser could simultaneously occupy the same public space).

Even if we accept the conclusion of the *Davenport* court that a claimant's use of the premises must be exclusive, there is not "undisputed evidence" in the record establishing that the area where Rodriguez fell was open to the public. *See Davenport*, 418 S.W.3d at 849. Instead, the Municipal Corporation's argument merely assumes that all sidewalks are generally open to the public and therefore the sidewalk in question was also open to the public. Based on this assumption, the Municipal Corporation contends that it should prevail on its jurisdictional challenge because Rodriguez "does not plead nor are there any jurisdictional facts to support that the Arena sidewalk was off limits to the public." To begin, the Municipal Corporation misplaces the burden of proof. Rodriguez alleged that she was an invitee when she tripped and fell on the Arena sidewalk. Therefore, as the party challenging the existence of jurisdictional facts, it was the City's burden to introduce evidence supporting its position that the sidewalk leading into the Arena was open to the public at the time of the event. *See Miranda*, 133 S.W.3d at 228; *Davenport*, 418 S.W.3d at 849.

14

Regardless, viewing the evidence in the light most favorable to Rodriguez, we conclude the record raises a fact question about whether the District paid for the exclusive use of the entire premises, which included not only the Arena itself, but also the surrounding parking lots and the sidewalk leading into the Arena.[3] Rodriguez testified that the convocation was not open to the public and that the only people on the premises were District employees, District police officers, and Arena personnel. Some of these police officers, who were there to provide security for the event, were positioned in the Arena parking lots. Further, the convocation took place on a Wednesday afternoon, and unlike the common area of the airport in *Davenport*, it is not apparent to us why a member of the public would be on the Arena sidewalk at that time. *See* 418 S.W.3d at 849. The sidewalk where Rodriguez fell is not next to a public road where a pedestrian may use it as they happen to walk by the Arena. Rather, the sidewalk follows the perimeter of the Arena, serving as a transition from the surrounding parking lots to the facility. Seemingly, its only purpose is to provide patrons with ingress or egress to and from the building. Simply put, the idea that this particular sidewalk is always a public space, regardless of whether a private event is occurring at the Arena, is not conclusively established by the record.

We conclude that there is a genuine issue of material fact as to whether Rodriguez was an invitee at the time of her fall. The Municipal Corporation's third sub-issue is overruled.[4]

---

[3] The record does not contain the rental agreement between the District and the Municipal Corporation. This agreement may include specific language regarding the use of the parking lot and the sidewalk. *See City of Fort Worth v. Posey*, 593 S.W.3d 924, 928 (Tex. App.—Fort Worth 2020, no pet.).

[4] Because the Municipal Corporation's fourth sub-issue is premised on Rodriguez's status as a

## VI.    CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Delivered and filed on the
11th day of January, 2024.

---

licensee, we do not reach that question. *See* TEX. R. APP. P. 47.1.

16