**Eugene OSADCHY, Appellant,**

v.

**SOUTHERN METHODIST UNIVERSITY,**
**Appellee.**

**No. 05–06–01115–CV.**

Court of Appeals of Texas,
Dallas.

Aug. 28, 2007.

for extension because it was heard after the court granted Baylor's motion to dismiss.

John W. Escover, Austin, TX, for appellant.

John H. McElhaney, Locke Liddell & Sapp, LLP, Dallas, TX, for appellee.

Before Justices WRIGHT, RICHTER and LANG.

## OPINION

Opinion by Justice LANG.

Eugene Osadchy appeals the trial court's summary judgment in favor of Southern Methodist University, ordering that he take nothing in his premise liability suit. In three issues, Osadchy asserts the trial court erred when it granted SMU's motion for summary judgment because: (1) it failed to apply the "public invitee" doctrine; (2) it failed to recognize Osadchy's status as a "business invitee"; and (3) in the alternative, Osadchy was a licensee and he did not have actual knowledge of the alleged dangerous condition. For the following reasons, we affirm the judgment of the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 12, 2005, Osadchy tripped and fell on the stairs outside of the building housing the Meadows School of the Arts on the SMU campus. Osadchy brought a premise liability suit against SMU, the owner of the premises, alleging he sustained personal injuries to his hand as a result of his fall while he was an "invitee" on SMU's premises.

Osadchy is a cellist and employee of the University of North Texas. At the time of the fall, he was also a member of the Dallas Chamber Orchestra. Osadchy stated that, during his membership with the Orchestra from 2000 to 2005, the Orchestra used different facilities for practice sessions, including the facilities at the Meadows School of the Arts. The Meadows School of the Arts facility was used two or three times a year by the Orchestra. Osadchy stated in his deposition that on

February 12, 2005, the Orchestra was originally set to rehearse elsewhere, but it was more convenient for some members of the Orchestra to meet at SMU. Accordingly, Ronald Neal, an adjunct Professor at SMU and artistic director for the Orchestra, contacted Osadchy by telephone and told him to meet the other members of the Orchestra at the Meadows School of the Arts for rehearsal at approximately 9:30 a.m.

Upon arrival at the SMU campus, Osadchy attempted to enter the Meadows School of the Arts building by mounting the steps on the south side of the building. While carrying his cello, he tripped as he walked up the stairs. In an attempt to break his fall, Osadchy outstretched his left hand and landed on his fingers. The personal injuries he sustained to his hand were diagnosed as severe ligament trauma to the joints of his fingers. Osadchy admits that a readily accessible ramp was located next to the steps, but he chose to use the stairs. He stated he had entered the building on several prior occasions to his fall using the same stairs where the accident occurred. Also, Osadchy testified in his deposition that, at the time he ascended the stairs and tripped, he was able to see the stairs and nothing was hidden from his view.

The Meadows School of the Arts has a policy requiring any person or organization wishing to use space at the Meadows School of the Arts premises to make a written request. It is undisputed neither the Orchestra, nor any member of the Orchestra, submitted a written request to use the Meadows School of the Arts facility for rehearsal on the date of the accident. Osadchy testified in his deposition that the rehearsal on February 12, 2005, was not an "SMU-sponsored function."

Prof. Neal, by sworn affidavit, stated members of the Orchestra planned to re-hearse for a performance on February 12, 2005. According to Prof. Neal, shortly before rehearsal, "some of the Orchestra members decided it would be convenient for them to hold the rehearsal at the Meadows School of the Arts." Further, Prof. Neal stated, "the rehearsal was not a part of my duties or responsibilities as an adjunct professor at SMU," and the performance "was not to be held on SMU's campus, was not sponsored by SMU, and had no connection to SMU or the Meadows School."

Osadchy offered the affidavit of engineer William Purcell, who opined about the stairway, stating, "SMU knew or should have known of their responsibility to provide a premises free of recognized (reasonably foreseeable) hazards likely to result in death or severe injury to persons reasonably anticipated to be exposed to such hazards." Specifically, Purcell stated as follows: "Mr. Osadchy's pathway was approximately 9 3/4", or 3 1/4" out of allowable height. This amounts to the riser being fifty percent (50%) in excess of the allowed maximum for the risers of this stairway." According to Purcell, SMU knew or should have known, among other things, that according to the Uniform Building Code any unsafe conditions were to be corrected.

Nancy Cochran, Director of SMU's Division of Music, testified the Orchestra has no affiliation with SMU. SMU has contractual agreements with some musical organizations to rent the school's facilities in exchange for a benefit to SMU such as providing tickets to the performances or opportunities to recruit SMU students. However, SMU did not have any relationship with the Orchestra, Cochran did not know the Orchestra was using the Meadows School of the Arts for rehearsal, Prof. Neal was not authorized to invite anyone to the premises outside the scope of his

duties as an adjunct professor, and the written application procedure for use of the premises was not followed in this instance. Cochran stated that because the school is large, it is possible that individuals might access the building without proper authorization, but she would intervene if this came to her attention. Further, Cochran stated if she became aware faculty members were using the school's facilities in an unauthorized way, then she would speak to them directly.

SMU filed a traditional motion for summary judgment, pursuant to Texas Rule of Civil Procedure 166a, arguing Osadchy was at most a licensee, the alleged premise defect was "open and obvious," and therefore, as a matter of law, SMU breached no duty to Osadchy. After a hearing, the trial court granted SMU's motion for summary judgment. Osadchy filed a motion for new trial, which the trial court denied. He now brings this appeal.

## II. STANDARD OF REVIEW

We review a summary judgment *de novo* to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). The standards for reviewing motions for summary judgment are well established. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Thompson v. Curtis*, 127 S.W.3d 446, 449 (Tex.App.-Dallas 2004, no pet.). To prevail, a defendant moving for summary judgment must either disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Gen. Mills Rests.,*

*Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832 (Tex.App.-Dallas 2000, no pet).

The movant for summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 548–49. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.*

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *see also First Union Nat'l Bank v. Richmont Capital Partners I, L.P.*, 168 S.W.3d 917, 923 (Tex.App.-Dallas 2005, no pet.).

## III. PUBLIC INVITEE

In his first issue on appeal, Osadchy contends the trial court erred in granting summary judgment and not recognizing the applicability of the "public invitee" doctrine set forth in the Restatement of Torts. Under this doctrine, Osadchy argues he was a "public invitee" because the Meadows School of the Arts was open to the general public on the date of his accident. In response, SMU asserts Texas does not recognize the legal concept of the "public invitee" doctrine set forth in the Restatement of Torts. In addition, SMU states Osadchy's factual discussion regarding the public invitee doctrine disclosed no evidence supporting Osadchy's entitlement to invitee status.

## A. Applicable Law

Whether a duty exists is a threshold question of law for the court to decide from the facts surrounding the occurrence in question. *Thapar v. Zezulka,* 994 S.W.2d 635, 637 (Tex.1999); *Am. Indus. Life Ins. Co. v. Ruvalcaba,* 64 S.W.3d 126, 134 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). In a premise liability case, the duty owed to the plaintiff depends on his status as an invitee, licensee, or trespasser. *Ruvalcaba,* 64 S.W.3d at 134; *Rosas v. Buddie's Food Store,* 518 S.W.2d 534, 536 (Tex.1975).

The Restatement (Second) of Torts categorizes "invitees" as follows:

(1) an invitee is either a public invitee or a business visitor.

(2) a public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

Restatement (Second) of Torts § 332 (1965).

In *Ruvalcaba,* the Houston Court of Appeals expressly rejected the "public invitee" doctrine, stating, "The Texas Supreme Court has not adopted the 'public invitee' concept of Restatement (Second) of Torts § 332(1) & (2)(1965)." *Ruvalcaba,* 64 S.W.3d at 138–41 (holding injured child of a company employee, was not an invitee because the private office building where the child was injured was not open to the public for business).

## B. Application of Law to Facts

Osadchy urges this court to adopt the "public invitee" doctrine set forth in the Restatement (Second) of Torts cited above. He contends he was a "public invitee" because the Meadows School of the Arts was open to the general public. Further, he argues the trial court "either failed to recognize the public invitee doctrine, or it recognized the doctrine, but failed to hold SMU to its burden to show there was no genuine issue of material fact."

The "public invitee" doctrine has not been adopted by the Texas Supreme Court and we decline to adopt that theory of liability. *See Ruvalcaba,* 64 S.W.3d at 138–39. Accordingly, Osadchy's first issue is resolved against him.

## IV. BUSINESS INVITEE

In his second issue, Osadchy asserts SMU owes a duty to him because he was a "business invitee." In support of that contention, Osadchy claims SMU derived an economic benefit from Osadchy's presence at the Meadows School of the Arts. However, Osadchy offers no specific facts in opposition to the motion for summary judgment as to any economic benefit to SMU because of the Orchestra's rehearsal at SMU or Osadchy's presence at SMU on February 12, 2005. Also, Osadchy contends, for the first time on appeal, that the facts in the record demonstrate Prof. Neal had "apparent authority" to invite Osadchy onto SMU's premises. Finally, Osadchy alleges that SMU was "open to the public" and therefore, "SMU was willing to have him and the Orchestra on its premises." SMU responds Osadchy should not be held to be a "business invitee" because he was not on SMU's campus to transact business with SMU and SMU realized no business benefit from Osadchy's unauthorized use of SMU's facilities. Further, SMU argues it is irrelevant whether Prof. Neal consented to Osadchy's presence on SMU's campus and

Osadchy was not what SMU calls a "derivative invitee."

## A. Applicable Law

In determining whether a person was a "business invitee," the Houston Court of Appeals in *Ruvalcaba* stated "the general test" under this theory is whether, at the time of the accident, the person had "present business relations" with the premise owner, which would make their presence of mutual benefit to both of them. *See Ruvalcaba*, 64 S.W.3d at 135. The Court explained, "[a] person is an invitee only where the owner or occupier invites the person to enter the premises and where the person's visit involves at least a potential pecuniary profit to the owner or occupier." *Id.* at 135 (citing *Olivier v. Snowden*, 426 S.W.2d 545, 550 (Tex.1968)).

## B. Application of Law to Facts

Osadchy argues he was a "business invitee" and SMU, as owner of the premises, breached its duty to Osadchy as a business invitee. Osadchy asserts SMU received a "benefit" from their faculty's affiliation with artistic groups in the community, such as Prof. Neal's membership with the Orchestra. It is undisputed Prof. Neal was a member of the Orchestra. However, the question before us is what duty, if any, SMU has to Osadchy. In order to do so, we must evaluate any evidence as to the relationship, if any, between SMU and Osadchy or SMU and the Orchestra. Osadchy has described no evidence in the record that demonstrates SMU derived a benefit from Osadchy's presence or that of the Orchestra on the premises or that he or the Orchestra enjoyed "present business relations" with SMU. *See Ruvalcaba*, 64 S.W.3d at 135.

In addition, Osadchy testified he was expressly invited to enter the premises by Prof. Neal on the date of his accident. Based on this invitation, he now argues on appeal that Prof. Neal had "apparent authority" to invite Osadchy to SMU. SMU responds it is irrelevant whether Prof. Neal consented to Osadchy's presence on SMU's campus and Osadchy was not what SMU calls a "derivative invitee." SMU explains that any person, such as Osadchy, accompanying or visiting an invitee is not automatically granted invitee status or what SMU calls "derivative invitee" status. Osadchy contends that Prof. Neal's express invitation and employment status with SMU led him to believe Prof. Neal had apparent authority.

Neither in his pleadings, nor in his response to the motion for summary judgment, did Osadchy claim Prof. Neal had the "apparent authority" to invite Osadchy to rehearse at the SMU campus. Osadchy's central assertion on this point is that he is a "business invitee" because Prof. Neal is authorized to be present at the Meadows School of the Arts facility and they had practiced at the Meadows School of the Arts facility several times prior to February 12, 2005. Therefore, Prof. Neal's invitation had the effect of SMU having invited Osadchy. The only evidence in the record before us as to the authority of Prof. Neal granted by SMU to invite people to the Meadows School of the Arts was limited to his duties as an adjunct professor. There is no evidence Prof. Neal's duties included any participation in the Orchestra. Osadchy acknowledges the Orchestra rehearsal was not an SMU sponsored event and SMU had no relationship with the Orchestra. Accordingly, Osadchy argues, as he did in response to the motion for summary judgment, "[I]t is only reasonable through the previous conduct of SMU and the express authorization of its professor Ronald Neal that Mr. Osadchy would have the under-

standing that SMU was willing to have him on its premises."

Other than his own assertions set forth above, Osadchy does not identify any evidence that SMU, acting through Prof. Neal, invited him to the Meadows School of the Arts. There is no evidence SMU representatives, other than Prof. Neal, even knew the Orchestra had previously used the Meadows School of the Arts facility to practice. Further, there is nothing in the record that Prof. Neal, an adjunct professor, had the authority to invite people, including Osadchy, to SMU's premises for purposes outside of his duties.

Approaching the issue in a slightly different manner, Osadchy contends, based upon his assertions, his presence at SMU is analogous to a patron at a store. We disagree. For example, in *Ruvalcaba,* the Houston Court of Appeals held an injured child of a company employee, was not an invitee because he was not on the premises for any business purposes. *See Ruvalcaba,* 64 S.W.3d at 135. Based on the reasoning in *Ruvalcaba,* we conclude Osadchy did not offer any facts to support his contention that he held "business invitee" status because he was on the premises to engage in "present business relations" with SMU. *See Ruvalcaba,* 64 S.W.3d at 135.

Finally, Osadchy asserts he is a "business invitee" because the Meadows School of the Arts is a public building, and therefore, "SMU was willing to have him and the Orchestra on its premises." However, the record reflects the Meadows School of the Arts is not open to the general public.[1] Cochran testified SMU has contractual agreements with some musical organizations to rent the school's facilities. How-

ever, it is undisputed the Orchestra did not submit a written request to use the Meadows School of the Arts for rehearsal on the day of his injury. Finally, critical to our conclusion on this point, as stated previously, Osadchy does not refer us to any evidence in the record that SMU invited him to enter the premises.

On this record, we determine Osadchy is not a "business invitee" because there is no evidence raising a material fact issue he entered the premises of SMU at the invitation of SMU, or that he had "present business relations" with SMU which would make his presence of mutual benefit to both of them. *See Ruvalcaba,* 64 S.W.3d at 135. We decide Osadchy's second issue against him.

## V. LICENSEE

■ In his third issue, Osadchy argues even if we determine he is not a "public invitee" or "business invitee," he was privileged to enter the premises as a "licensee." In support of his contention that SMU breached its duty to him as a "licensee," he states, "SMU failed to present any evidence that [he] had actual knowledge of the specific defective condition." SMU does not dispute that Osadchy was entitled to "licensee" status. Rather, SMU argues it did not breach any duty to Osadchy because the record conclusively demonstrates the alleged defects were "open and obvious," and "Osadchy perceived the alleged defects."

### A. Applicable Law

■ A licensee is a person privileged to enter and remain on the premises of another by express or implied permission

[1]. Osadchy's brief states the Meadows School of the Arts is a public building and cites an "arts and entertainment calendar" purportedly from SMU's website found under tab 8 in the appendix to appellant's brief. Osadchy alleges this evidence was presented to the trial court. However, we find no such evidence in the record.

of the owner, and not by any express or implied invitation. *Wong v. Tenet Hosp. Ltd.,* 181 S.W.3d 532, 537 (Tex.App.-El Paso 2005, no pet.); *Peerenboom v. HSP Foods, Inc.,* 910 S.W.2d 156, 163 (Tex. App.-Waco 1995, no writ). The difference between a licensee and an invitee is that an invitee is present for the mutual benefit of himself and the owner, while a licensee is on the premises only for his own purposes, not because of any business dealings with the owner. *Peerenboom,* 910 S.W.2d at 163. In the absence of some relation which inures to the mutual benefit of the two, or to that of the owner, no invitation can be implied and the injured person must be regarded as a mere licensee. *Mendez v. Knights of Columbus Hall,* 431 S.W.2d 29, 32 (Tex.Civ.App.-San Antonio 1968, no writ). Compared to an invitee, a lower standard of care is due to a licensee. *See Wong,* 181 S.W.3d at 537.

The duty owed by the licensor to a licensee is not to injure the licensee willfully, wantonly, or through gross negligence, or, in cases in which the owner or occupier has actual knowledge of a dangerous condition unknown to the licensee, to warn of or make safe the dangerous condition. *Wal–Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709 (Tex.2003); *Wong,* 181 S.W.3d at 537; *Ruvalcaba,* 64 S.W.3d at 134. A landowner or occupier is liable to a licensee only if the owner or occupier has actual knowledge of the condition that injured the plaintiff. *Wong,* 181 S.W.3d at 537.

If the licensee has the same knowledge about the dangerous condition as the licensor, then no duty to the licensee exists. *Wal-Mart,* 102 S.W.3d at 709. Therefore, a licensee must prove, among other things, that the licensee did not actually know about the alleged dangerous condition in order to establish liability for a premise defect. *Id.* "[A] licensee is not entitled to expect that the possessor [of land] will warn him of conditions that are perceptible to him, or the existence of which can be inferred from facts within his present or past knowledge." *Id.* at 709 (citing *Lower Neches Valley Auth. v. Murphy,* 536 S.W.2d 561, 564 (Tex.1976)). The Supreme Court of Texas in *Wal-Mart* further explained, "[i]n other words, a licensor owes no duty to a licensee so long as the evidence conclusively establishes the licensee perceived the alleged dangerous condition." *Wal-Mart,* 102 S.W.3d at 709.

## B. Application of Law to Facts

SMU does not dispute that Osadchy held the status of at least a "licensee." Therefore, we must determine whether SMU, as licensor, established as a matter of law that there is no genuine issue of material fact that SMU did not breach its duty to Osadchy as a licensee.

Asserting the trial court's summary judgment is in error, Osadchy directs the Court to the affidavit of engineer Purcell in support of his contention that SMU had actual knowledge of the alleged dangerous condition respecting the stairs of the Meadows School that presented an unreasonable risk of harm. SMU does not refute Osadchy's contention that SMU had actual knowledge. Rather, SMU moves beyond that issue and asserts the condition of the stairway was "open and obvious," easily perceptible to Osadchy, and his claim is barred because Osadchy actually knew of the condition he claimed was dangerous.

SMU asserts the condition of the stairway was easily perceptible to Osadchy and therefore, it did not have a duty to Osadchy. Osadchy testified in his deposition as follows respecting his perception of the condition of the stairway at the time of his fall:

COUNSEL: Were you able to see the stairs?

OSADCHY: Yes, I think so.

COUNSEL: Were you able to see the ramp?

OSADCHY: That's correct.

COUNSEL: There wasn't anything that was hidden from you that day as you walked up the stairs, was there?

OSADCHY: No. But the ramp—we were coming from the parking lot from this side of the building, from the left side, so that was the closest. And I was carrying the cello, not wheeling it, I was carrying it by the handle.

COUNSEL: I understand. Sure. Now, describe for me how the accident happened. We're up to the point where you're beginning to start walking up the steps. Tell me step by step or detail by detail how it happened.

OSADCHY: I don't think it's possible to say how it happened. But I think I tripped with the left leg and I—and I fell on the left side of my body. So the cello was up and I—I tripped on the left leg.

The record reflects that from 2000 to 2005, during Osadchy's membership with the Orchestra, the Orchestra utilized the facilities at the Meadows School of the Arts two or three times a year to rehearse and practice. Osadchy admitted he had entered the building on several occasions prior to his fall using the same stairs where the accident occurred. Although Osadchy argues on appeal that he did not have actual knowledge of the condition of the stairway, Osadchy's testimony indicates he was aware of the condition of the stairway and he had the same knowledge about the alleged dangerous condition as SMU. *See Wong,* 181 S.W.3d 532, 540 (finding testimony of plaintiff alone indicating alleged dangerous condition of a shrub on hospital premises was not perceptible was not enough to defeat summary judgment).

Assuming without deciding the condition of the stairway was dangerous and presented an unreasonable risk of harm, and that SMU was aware of this condition, we conclude SMU did not breach its duty to Osadchy as a licensee because he had the same knowledge of the alleged dangerous condition of the stairway as SMU. *Wal–Mart,* 102 S.W.3d at 709. Accordingly, SMU had no duty to Osadchy. We decide Osadchy's third issue against him.

## VI. CONCLUSION

The trial court did not err when it granted SMU's motion for summary judgment. The judgment of the trial court is affirmed.