

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00351-CV

_____

THE CITY OF FORT WORTH, TEXAS, Appellant

V.

DIANNE POSEY, Appellee

On Appeal from County Court at Law No. 2
Tarrant County, Texas
Trial Court No. 2018-004126-2

Before Birdwell, Bassel, and Wallach, JJ.
Opinion by Justice Birdwell

## OPINION

The City of Fort Worth appeals the denial of its plea to the jurisdiction regarding appellee Diane Posey's premises liability claim. This dispute turns on whether Posey paid for use of the City's premises, because the answer to that question will determine whether Posey must prove the City's actual knowledge of the premises defect or merely constructive knowledge. We hold that Posey's pleadings and evidence create a fact issue as to whether she paid for use of the walkway where she was injured and whether the City had constructive knowledge of the alleged defect. We therefore affirm.

Posey's factual allegations are not disputed. Posey alleged that on October 14, 2017, she attended a gift fair hosted by the Junior League at the City-owned Will Rogers Memorial Coliseum. She paid a fee to park at the coliseum and another fee to attend the gift fair within. As Posey exited the building and walked back to her vehicle along a public walkway, she tripped over an obstruction—a metal pipe fitting that protruded from the ground. She fell face first onto the sidewalk, breaking her teeth. Posey brought a premises liability claim against the City. The City asserted immunity and filed a plea to the jurisdiction, which the trial court denied. The City appeals.

A city's governmental immunity will defeat a trial court's subject matter jurisdiction unless the immunity has been waived, and it is therefore properly raised by a plea to the jurisdiction. *City of Hous. v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 575 (Tex. 2018). We review a trial court's disposition of a party's plea to the jurisdiction de novo. *Id.* In doing so, we consider the pleadings, factual assertions, and all relevant

2

evidence in the record. *Id.* Looking at the plaintiff's intent, pleadings are construed liberally in favor of the plaintiff to determine whether the facts alleged affirmatively demonstrate the court's jurisdiction to hear the matter. *Id.* We take as true all evidence favorable to Posey, indulging every reasonable inference and resolving any doubts in her favor. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009). The trier of fact resolves the jurisdictional issue if evidence in the record raises a fact issue; however, the trial court rules as a matter of law if the evidence is undisputed or fails to raise a fact question. *Hous. Mun. Emps.*, 549 S.W.3d at 575.

In its first issue, the City disputes whether Posey paid for use of the coliseum premises. Under the Texas Tort Claims Act, the City owes Posey a duty "that a private person owes to a licensee on private property, unless the claimant pays for use of the premises." Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a). If Posey paid for the use of the premises, she is an invitee; if not, she is a mere licensee. *Sullivan v. City of Fort Worth*, No. 02-10-00223-CV, 2011 WL 1902018, at *8 (Tex. App.—Fort Worth May 19, 2011, pet. denied) (mem. op. on reh'g). That distinction is relevant to the elements of Posey's cause of action. *Id.* If Posey was a licensee, she must show that the City had actual knowledge of the unreasonable risk of harm created by the obstruction. *Id.* (citing *State Dep't of Highways v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992) (op. on reh'g)). If she was an invitee, she need only show that the City should have known of the risk—i.e., constructive knowledge. *Id.*

3

Posey alleges that she paid for use of the premises, including the sidewalk where she was injured, in multiple ways. First, she paid a fee to park at the coliseum, and it is undisputed that the parking fee went directly to the City. Second, Posey offered evidence that she paid a $12 fee to enter Junior League's gift fair, and Junior League in turn paid the City to rent the premises for its patrons' use. Junior League's rental agreement provided that Junior League and its patrons could use certain rooms within the coliseum as well as "contiguous common areas." The agreement also contemplated that the premises' sidewalks and entryways would be used by Junior League and its patrons for "ingress or egress to and from" the coliseum and for no other purpose. Further, Posey offered the deposition testimony of City representative Kevin Kemp, in which he agreed that the rental agreement gave Junior League's customers the "right . . . to use City of Fort Worth property to enter and exit the building." The City representative agreed that part of what Junior League paid the City for was "the ability to access" the event space along the walkway. Posey submits that through her parking fee, her entry fee, and Junior League's rental fee, she paid for use of the premises and should be entitled to invitee status.

The City responds that while Posey may have paid for use of the parking lot and the convention space within the coliseum, she did not pay for use of the walkway where she fell. That walkway, the City reasons, is open to the public generally, and no payment is required to access it. The City says that because Posey or other members of the

public might have accessed the same area without paying, Posey did not pay to use that area.

Some courts have applied the reasoning that the City advances, suggesting that we should ask "whether a claimant would have been allowed entry onto premises *but for* a payment made to the governmental unit that owns the property." *City of El Paso v. Viel*, 523 S.W.3d 876, 892 (Tex. App.—El Paso 2017, no pet.). In this line of cases, the claimant is said to have paid for use of the premises only when the claimant was injured in an area where members of the public could not rightfully be present without also paying. *Id.* at 892–93 (collecting cases). In *Sullivan*, we implied something similar when we declared a wedding guest to be an invitee based on evidence (1) that he was allowed admission to the event space (a botanic garden) only because the host had paid the City for the privilege and (2) that the general public was excluded from the garden during the wedding. *See* 2011 WL 1902018, at *8. Though we never made clear why we found this sort of evidence to be persuasive, *Sullivan* impliedly supports the City's argument.

In the same vein, the City also directs our attention to *City of Dallas v. Davenport*, an opinion that applied comparable reasoning and that is analogous to this case on its facts. 418 S.W.3d 844 (Tex. App.—Dallas 2013, no pet.). In *Davenport*, the plaintiff had just picked up his luggage from the baggage claim at Love Field, and he was heading toward the parking garage when he slipped on a wet walkway and sustained injuries. *Id.* at 846. The plaintiff sued the City of Dallas, arguing that he should be an invitee because he purchased an airline ticket (giving him access to the terminal) and paid to

5

park (giving him access to the parking garage), and he was returning from the terminal to the parking garage when he was injured. *Id.* at 848. Despite these payments, the court held that Davenport was a mere licensee. *Id.* at 849. The court reasoned that because other members of the public could freely access the walkway where Davenport was injured without paying, Davenport had not paid for use of the premises where he fell:

> The undisputed evidence was that people could be in this part of the airport even if they had not paid to park or purchased an airline ticket. But, under Davenport's analysis, the City would owe a lesser duty to people in the area where Davenport fell if they had not purchased an airline ticket or had not paid to park in the airport parking garage. We see "no rational basis," however, for distinguishing between people in this part of the airport on the basis of whether they purchased an airline ticket, paid to park their car in the airport parking garage, or arrived at the airport by cab or other means.

*Id.*

We must respectfully disagree with *Davenport*, because we do see a "rational basis" to distinguish between these types of visitors: the statute's plain text. Again, a person is treated as an invitee if she "pays for use of the premises." Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a). The text of the statute makes a person's status dependent on whether she has paid for use of the premises. It says nothing of whether other members of the public must also pay for use of the same premises. And the statute does not say that the claimant must pay for exclusive or nonpublic use of the premises. The public's access to the same space is immaterial. Rather, according to the statute's plain language, a person is entitled to invitee status if the person paid to use the premises, regardless of

6

whether other members of the public might also be present without paying. This sort of reasoning was expressed in *M.D. Anderson Hospital & Tumor Institute v. Felter*, 837 S.W.2d 245, 247–48 (Tex. App.—Houston [1st Dist.] 1992, no writ). There the court considered only whether a wife had paid for use of the hospital premises where she was injured; because she paid for use of the hospital, the court held she was an invitee, and the court gave no thought to whether members of the public might also visit the same area of the hospital without paying (as presumably they could). *Id.* In our view, this mode of analysis is the right one.

To illustrate how this thinking corresponds with the statute's text, suppose the facts of *Sullivan* were somewhat different: a bride's father pays $10,000 for the right to use an open field at a botanic garden for an outdoor wedding, though the public is *not* excluded from the grounds during the wedding. During the wedding, a jogger happens by, having paid nothing to enter. As the jogger passes, the father trips over a hazard in the field and is injured. Under the reasoning of *Davenport* and its kind, the father would not have paid for use of the premises simply because the jogger could access the same area without paying. We think that is a distortion of the statute's language. The father has paid $10,000 specifically for use of the premises where he fell, and there is nothing in the statute which says that the public's access to the same area should detract from that fact. Under the plain language of the statute, it does not matter that the jogger did not pay, regardless of whether we implied otherwise in *Sullivan*. Thus, within the same

7

area, there could be multiple persons of different status depending simply on whether they paid for use of the premises.

This interpretation—allowing people of varying status to coexist in the same location—is consistent with Texas's and the Restatement's view of invitees generally. An invitee is one who enters the property of another with the owner's knowledge and for the mutual benefit of both. *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 202 (Tex. 2015). Whether an entrant is an invitee or a licensee depends in large part on the entrant's purpose in coming to the property. *Khan v. Hasan*, No. 01-07-00082-CV, 2008 WL 598148, at *3 (Tex. App.—Houston [1st Dist.] Mar. 6, 2008, no pet.) (mem. op.); *Osadchy v. S. Methodist Univ.*, 232 S.W.3d 844, 852 (Tex. App.—Dallas 2007, pet. denied); *Poehls v. A.L. Turner*, No. 03-01-00727-CV, 2002 WL 1995492, at *2 (Tex. App.—Austin Aug. 30, 2002, no pet.) (not designated for publication); *see Renfro Drug Co. v. Lewis*, 235 S.W.2d 609, 615–16 (Tex. 1950).[1] Thus, people on the same public premises might have different status depending on their purposes, as the Restatement illustrates. When

---

[1]As one court put it,

> To come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must at least be some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the object of the visit may not be for the benefit of the occupant.

*Hous. Belt & Terminal Ry. Co. v. Rogers*, 44 S.W.2d 420, 422 (Tex. App.—Galveston 1931, writ dism'd).

a person enters a shop and purchases goods, she will be considered an invitee under the Restatement because the purpose of her presence is consistent with the owner's commercial reason for impliedly inviting the public inside. Restatement (Second) of Torts § 332 cmt. c (1965). By contrast, a traveling salesperson who simultaneously enters the same premises in hopes of selling goods is not a business invitee because his presence is not consistent with the reason behind the owner's invitation; he is a mere licensee according to the Restatement view. *Id.* And a person who had received a trespass warning but nonetheless barges into the same shop would be a trespasser. Thus, within the same public premises, multiple people might have different status depending on the degree to which their purposes are consistent with the commercial reasons behind the owner's invitation, and one person's status has little bearing on another's. Similarly, here, multiple people of different status might be present on coliseum grounds, with their status varying by whether they had paid for use of the premises.

Posey's pleadings and evidence, when construed liberally and taken as true, show that she paid to use the coliseum premises in two ways.[2] First, Posey directly paid the

---

[2] Only by accepting such payments will the City's immunity be yielded, and the City may therefore carefully control its own immunity through its decision to accept payment or not. Thus, this is not a case that might open the floodgates to "unforeseen expenditures associated with the government's defending lawsuits and paying judgments." *Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 751 (Tex. 2019) (quoting *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 123 (Tex. 2015)).

City to park at the coliseum. Second, through Junior League, Posey indirectly paid the City to attend the gift fair within the coliseum.[3] Unlike *Davenport*, Posey introduced multiple forms of evidence—including a contract and testimony from the City's own representative—showing that the payments also endowed her with the express right to use the walkway to travel between the parking lot and the gift fair. It is undisputed that Posey was using the walkway to travel from the gift fair to the parking lot when she was allegedly injured. Under the plain text of the statute, it does not matter that other members of the public might have also been present on the walkway without paying; a passerby's independent reasons for being present would not negate the pleadings and evidence that (1) Posey paid both directly and through Junior League for use of the premises, (2) at the time of her injury, she was on coliseum premises exercising usage

---

[3]The City has not contested Posey's assertion that she should be credited for indirectly paying the City through Junior League. Our precedent compels us to agree with Posey and to conclude that the "analysis should focus on whether [the claimant] paid for entry onto the premises and not on whether the City received the money" directly from the claimant. *See City of Hidalgo v. Hodge*, No. 13-16-00695-CV, 2018 WL 460808, at *3 (Tex. App.—Corpus Christi–Edinburg Jan. 18, 2018, pet. denied) (mem. op.) (citing *Sullivan v. City of Fort Worth*, No. 02-10-00223-CV, 2011 WL 1902018, at *8 (Tex. App.—Fort Worth May 19, 2011, pet. denied) (mem. op. on reh'g), and *Dall.– Fort Worth Int'l Airport Pub. Facility Improvement Corp. v. Banks*, No. 02-09-176-CV, 2010 WL 87865, at *4 (Tex. App.—Fort Worth Jan. 7, 2010, pet. denied) (mem. op.)); *see also Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 515 (Tex. 1978) (quoting Restatement (Second) of Torts § 360 cmt. c (1965)) (discussing a lessor's duty to a lessee's invited guests, who are imputed with certain rights belonging to the lessee); *cf. City of El Paso v. Viel*, 523 S.W.3d 876, 893–94 (Tex. App.—El Paso 2017, no pet.) (crediting employee for employer's entry payments); *Tex. Eng'g Extension Serv. v. Gifford*, No. 10-11-00242-CV, 2012 WL 851742, at *1 (Tex. App.—Waco Mar. 14, 2012, no pet.) (mem. op.) (same); *City of Dall. v. Patrick*, 347 S.W.3d 452, 457 (Tex. App.—Dallas 2011, no pet.) (crediting child for mother's payment).

rights—to enter and exit—bestowed by the payments, and (3) her reason for being present was consistent with the commercial purpose behind the fees that the City charged for the coliseum and its parking lot.[4]

Construing the pleadings liberally in Posey's favor and taking the evidence favorable to her as true, we hold that a fact issue exists as to whether she should be considered an invitee under the circumstances. As an invitee, Posey would be required to prove only constructive knowledge of the alleged tripping hazard. It is therefore unnecessary to consider the City's second issue, in which the City argues that it did not have actual knowledge of the alleged tripping hazard. We need only consider the City's last remaining contention: that it did not have constructive knowledge.

In premises cases, constructive knowledge can be established by showing that the condition had existed long enough for the owner to have discovered it upon reasonable inspection. *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 15–16 (Tex. 2014); *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102–03 (Tex. 2000). What constitutes a reasonable time for discovery of the condition will vary depending on the facts and circumstances of each case; if the condition is conspicuous, or if the defendant's

---

[4]Even if there must be some degree of but-for causal connection between the claimant's payment and her presence on the premises, we believe such a requirement would be satisfied. Without her payments to park her vehicle at the coliseum and to enter the gift fair, Posey would not have been returning from the gift fair to her vehicle. The City has not introduced any evidence tending to show that Posey might have been at the coliseum that day for some other reason, such as a stroll. Thus, but for her payments to use the premises, Posey would not have been present on the City-owned and controlled walkway where she was injured.

employees were routinely or continuously in close proximity to a less conspicuous condition, this may shorten the time in which the premises owners should reasonably have discovered the condition. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002). Thus, when determining whether a defendant had constructive knowledge of a hazardous condition, the court may consider evidence of (1) the duration of the condition, (2) the employees' proximity to and interaction with it, (3) the condition's conspicuousness, and (4) any other relevant circumstances. *See Pena v. Home Depot U.S.A., Inc.*, 32 F. Supp. 3d 792, 797 (S.D. Tex. 2013) (summarizing *Reece*). The fact that the owner of a premises created a condition that posed an unreasonable risk of harm is also circumstantial evidence of knowledge. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 265 (Tex. 1992) (op. on reh'g); *see Brookshire Bros.*, 438 S.W.3d at 15.

Through its representative, the City denied actual knowledge of the alleged tripping hazard, which, again, was a metal pipe fitting cemented into and protruding from the walkway. However, the City's representative agreed that the fitting could not have been placed there without the City's knowledge; he testified that the City would have known about and contracted for any construction on the walkway. The representative testified that the pipe fitting was not newly constructed and had likely been present for over a year, and he assumed that it had been present throughout his almost seventeen-year tenure at the coliseum. According to the representative, City employees regularly traveled the walkway every two or three days. Finally, the

representative agreed that upon viewing the pipe fitting, he readily recognized it as a tripping hazard.

Taking this evidence as true and indulging every reasonable inference in Posey's favor, the record shows that the pipe fitting was present for at least a year, that the City must have known about the construction of the pipe fitting and probably contracted for it, that City employees' regular proximity to the condition gave them ample opportunity to discover any hazard it posed, and that any hazard was a conspicuous one. Together, this evidence creates a fact issue as to whether the City was constructively aware of the tripping hazard.[5] We therefore overrule the City's first and second issues, and we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: January 16, 2020

---

[5]The City further argues that the pipe fitting could have shifted or altered over time, such that it might have only recently become a tripping hazard. But Posey offered a photograph of the pipe fitting which suggested that the pipe's position was not a new circumstance. The photograph revealed the fitting to be a metal cap that could only have been intentionally threaded to the end of a pipe that extended down into the walkway. The cement surrounding the pipe was dry and intact, and there was nothing to indicate that the fitting might have recently broken through the surface from beneath.