# IN THE SUPREME COURT OF TEXAS

=========

No. 19-0190

=========

CATHOLIC DIOCESE OF EL PASO (SAN LORENZO CHURCH), PETITIONER,

v.

RITA PORTER, INDIVIDUALLY & AS MOTHER & NEXT FRIEND OF DAWONE PORTER,
A MINOR CHILD; AMANDA GUTIERREZ, INDIVIDUALLY; ARMANDO AND YVONNE
GUTIERREZ, INDIVIDUALLY AND AS PARENTS AND NEXT FRIENDS OF ARMANDO,
A MINOR CHILD; PATTY GORDON; AND DYLON GORDON, RESPONDENTS

=========

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE EIGHTH DISTRICT OF TEXAS

=========

**Argued February 2, 2021**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

JUSTICE LEHRMANN did not participate in the decision.

The principal issue in this premises-liability case is whether volunteers working in a third-party vendor's booth at a festival were invitees of the landowner or only licensees. Other issues include evidentiary rulings, improper summation, and the sufficiency of the evidence. We hold that the volunteers were licensees and that with respect to the other issues, the trial court did not commit reversible error. We reverse the court of appeals' judgment[1] in part and render judgment that the plaintiffs take nothing.

---

[1] 569 S.W.3d 686 (Tex. App.—El Paso 2018).

# I

San Lorenzo Church[2] is a small Catholic parish in Clint,[3] some 26 miles southeast of El Paso. For more than a century, the Church has held an annual festival on its grounds called the Fiesta de San Lorenzo. The festival is a three-day event featuring carnival rides, games, music, food and drink, arts and crafts, and vendors selling various items. The Church profits from the festival in a variety of ways—it receives 30 percent of the carnival's gross proceeds, sells drinks and ice, runs a number of food and activities booths, and rents space to 60 or so vendors who set up their own booths.

At one festival, the El Paso 4-H Leaders Association (4-H) rented a booth, which it used to sell funnel cakes, gorditas, and snow cones. 4-H provided its own equipment, including a snow cone machine, a funnel-cake fryer, a steam table, and a propane tank. The booth was an enclosed space behind a counter where festival-goers could be served.[4] The interior of the booth was off-limits to all but 4-H staffers. 4-H paid the Church $650 to rent the booth. The Church received no part of 4-H's sales.

On Sunday, the third day of the festival, a fire broke out in the 4-H booth. Five volunteers—four teenagers and one adult—were working in the booth at the time, and all suffered injuries from the flames. The parents of the four teenage volunteers (the Families) sued the Church and Heritage Operating, L.P., which had allegedly filled 4-H's propane tank.[5]

---

[2] Plaintiffs sued the "Catholic Diocese of El Paso (San Lorenzo Church)", which we refer to as "the Church".

[3] Clint's population at the 2010 census was 926. The Church has 300–400 families.

[4] The court of appeals' opinion includes a diagram. 569 S.W.3d at 695.

[5] In this Court, the Families are Rita Porter, individually and as mother and next friend of Dawone Porter, a minor child; Amanda Gutierrez, individually; Armando and Yvonne Gutierrez, individually and as parents and next

At trial, the parties clashed primarily over the cause of the fire. The Families asserted it was due to a leaky propane tank, while the Church and Heritage maintained that the fire started when one of the volunteers dropped water or ice into a fryer. After hearing evidence from 35 fact and expert witnesses over the course of a month, the jury returned a verdict for the defendants. The jury found that the 4-H volunteers were licensees on the Church property and awarded the Families zero damages. The jury failed to find that either the Church or Heritage negligently caused the volunteers' injuries or that the Church controlled the injury-causing activity. The trial court rendered a take-nothing judgment on the verdict.

The court of appeals affirmed in part and reversed in part.[6] The court held that the volunteers were the Church's invitees as a matter of law[7] and that the verdict for the Church was against the great weight and preponderance of the evidence.[8] The court rejected the Families' arguments that evidence of Heritage's lack of negligence was factually insufficient;[9] that the trial court committed reversible error in several evidentiary rulings;[10] and that the trial court erred by failing to correct a statement made by the Church's attorney in summation.[11] Accordingly, the

---

friends of Armando Gutierrez, a minor child; Patty Gordon; and Dylon Gordon. The Families also sued several adult leaders of the 4-H club but settled with them, leaving the Church and Heritage as the only defendants at trial.

[6] 569 S.W.3d 686.

[7] *Id.* at 726.

[8] *Id.* at 724.

[9] *Id.* at 720.

[10] *Id.* at 729–736.

[11] *Id.* at 729.

court affirmed the trial court's judgment as to Heritage but reversed as to the Church, and it remanded the Families' claims against the Church for a new trial.[12]

Both the Church and the Families petitioned this Court for review. We granted both petitions.

## II

In a premises-liability action, the duty an owner or occupier of property owes someone on the property depends on that person's status.[13] The duty owed an invitee is "to exercise reasonable care to protect against danger from a condition on the land that creates an unreasonable risk of harm of which the owner or occupier knew or by the exercise of reasonable care would discover."[14] A lesser duty is owed a licensee: to "use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not."[15] Generally, a premises-liability plaintiff's status is a question of law, though it can be a question for the jury when facts relevant to the legal standard are in dispute.[16] We consider first whether the

[12] *Id.* at 736.

[13] *Scott & White Mem'l Hosp. v. Fair*, 310 S.W.3d 411, 412 (Tex. 2010).

[14] *Id.* (quoting *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000)).

[15] *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 385 (Tex. 2016) (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)). A landowner also may not "injure a licensee by willful, wanton or grossly negligent conduct". *Id.*

[16] *See Olivier v. Snowden*, 426 S.W.2d 545, 550 (Tex. 1968) ("The facts essential to the determination of Snowden's status are not in dispute. Therefore, whether the facts showed Snowden to have been an invitee or a licensee was a legal question for the Court."); *Carlisle v. J. Weingarten, Inc.*, 152 S.W.2d 1073, 1077 (Tex. 1941) (holding that "there was evidence from which the jury could have inferred an implied invitation for the mother to bring the child to the store with her"); *Lechuga v. S. Pac. Transp. Co.*, 949 F.2d 790, 794 (5th Cir. 1992) (explaining that under Texas premises-liability law, the plaintiff's status "is a legal question except when sufficient issues of fact exist to warrant submission to a jury" (citing *Olivier*, 426 S.W.2d at 550)). In this case, the jury found that the volunteers were licensees. Accordingly, to the extent that the facts relevant to the volunteers' status are disputed, the jury resolved those facts in favor of the volunteers being licensees.

4-H volunteers were invitees or licensees of the Church and then whether the Church breached its duty to them.

## A

"An invitee is one who enters the property of another with the owner's knowledge and for the mutual benefit of both."[17] In contrast, a licensee "is a person who goes on the premises of another merely by permission, express or implied, and not by any express or implied invitation."[18]

We long ago held that the requisite "mutual benefit" to an invitee and an owner or occupier of property is a shared business or economic interest. In *Cowart v. Meeks*, a hotel owner contracted with Meeks for repairs.[19] Sorrell wanted trash that was on the property and agreed with Meeks to haul it away without charge.[20] The Cowarts assisted Sorrell in exchange for a share of the trash.[21] The trash was delivered to them on the ground or in their trucks, and they had no reason to be in or on the building.[22] The Cowarts nevertheless climbed a fire escape to the top of the first floor to see how much more trash might be thrown from the building that day, and while they were descending, the fire escape collapsed, and they fell to the ground.[23] In determining whether a "person injured upon the premises of another was . . . an invitee or was merely a licensee", we wrote,

---

[17] *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 202 (Tex. 2015) (cleaned up).

[18] *Tex.-La. Power Co. v. Webster*, 91 S.W.2d 302, 306 (Tex. 1936).

[19] 111 S.W.2d 1105, 1106 (Tex. [Comm'n Op.] 1938).

[20] *Id.* at 1106–1107.

[21] *Id.*

[22] *Id.* at 1106.

[23] *Id.*

the general test is whether the injured person, at the time of the injury, had present business relations with the owner . . . which would render his presence of mutual aid to both, or whether his presence on the premises was for his own convenience, or on business with others than the owner.[24]

We concluded that the Cowarts' presence on the fire escape was no part of their business with the hotel owner or Meeks and that, therefore, they "were merely licensees".[25]

We cited *Cowart* in *Olivier v. Snowden*.[26] Snowden, an employee of a general contractor, was injured on a construction site while using scaffolding owned by Olivier, a subcontractor.[27] Olivier had erected the scaffolding for his own use, though he permitted others to use it.[28] Because there was "no evidence that the work which Snowden was performing resulted in any pecuniary benefit to Olivier", we held that Snowden was a licensee.[29] To be an invitee, we explained, "the 'business' on which the visitor comes must be one of at least potential pecuniary profit" to the owner or occupier.[30]

We need not decide here whether invitee status always requires that the business benefit shared by the property visitor and the owner/occupier be economic in nature.[31] The Families do

---

[24] *Id.* at 1107.

[25] *Id.*

[26] 426 S.W.2d 545, 550 (Tex. 1968).

[27] *Id.* at 545–546.

[28] *Id.* at 550.

[29] *Id.*

[30] *Id.* (citing WILLIAM L. PROSSER, PROSSER ON TORTS 396 (3d ed. 1964)); *see also Am. Indus. Life Ins. Co. v. Ruvalcaba*, 64 S.W.3d 126, 135 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("A person is an invitee only where . . . the person's visit involves at least a potential pecuniary profit to the owner or occupier." (citing *Olivier*, 426 S.W.2d at 550)).

[31] The *Restatement (Second) of Torts* provides that a visitor is an invitee if she qualifies as "either a public invitee or a business visitor", defining a "public invitee" as "a person who is invited to enter or remain on land as a

not argue to the contrary. Following the *Texas Pattern Jury Charge*, the trial court charged the jury:

> "An invitee" is a person who is on the premises at the express or implied invitation of the possessor of the premises and who has entered thereon either as a member of the public or for a purpose for which the premises are held open to the public or for a purpose connected with the business of the possessor that does or may result in their mutual economic benefit. One who is an invitee cannot be a licensee at the same time.

The Families argued at trial that the volunteers were invitees as a matter of law and that no definition needed to be given to the jury, but they have not argued at any stage of this case that the charge incorrectly stated the law.

The court of appeals held that the volunteers were invitees because "the El Paso 4-H Club itself was an invitee" and there existed "no legally significant distinction between the status of the Club itself and that of the Club's volunteers."[32] 4-H had "signed a contract with the [Church] in which both parties would benefit economically from food and drink sales", and it "provided these services by using the labor of volunteer staff."[33] Because "[t]he Club and the [Church] both benefitted from the volunteer's [sic] labor", the court reasoned, the "distinction between the Club and its volunteers from the perspective of the [Church] is illusory."[34] Moreover, the court

_____

member of the public for a purpose for which the land is held open to the public" and a "business visitor" as "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." RESTATEMENT (SECOND) OF TORTS § 332 (1965). While the Restatement's business visitors would likely qualify as invitees under our potential-economic-benefit test, we have not adopted the Restatement's "public invitee" doctrine. *See Ruvalcaba*, 64 S.W.3d at 138 (observing that the "Texas Supreme Court has not adopted the 'public invitee' concept"); *Osadchy v. S. Methodist Univ.*, 232 S.W.3d 844, 849 (Tex. App.—Dallas 2007, pet. denied) (same). Because the Families do not argue, and nothing in the record suggests, that the 4-H booth was held open to the public, this case does not require us to consider whether to adopt that doctrine today.

[32] 569 S.W.3d 686, 725 (Tex. App.—El Paso 2018).

[33] *Id.*

[34] *Id.*

continued, the Church "knew that the Club would use volunteer labor to generate revenue for the mutual benefit of the Club and the [Church]".[35] Since the volunteers "entered the [C]hurch's premises both with the knowledge and for the benefit of the [Church] at the [Church's] implied invitation", the court concluded that the "standard for invitee status is met."[36]

But the volunteers' presence in the 4-H booth did not offer the Church any economic benefit—or any benefit at all. 4-H paid a flat fee to rent the booth, and none of the proceeds from the volunteers' sales of gorditas, funnel cakes, and snow cones went to the Church. The volunteers' presence in 4-H's booth benefitted 4-H but not the Church. As we said in *Cowart*, the volunteers' "presence on the premises was . . . on business with others than the owner of the premises."[37]

The Families argue that the volunteers could participate in the festival while not working in the 4-H booth, potentially benefitting the Church by spending money on beer, soda, water, and ice (which the Church had the exclusive right to sell at the festival), and in doing so would have been invitees like all the other public attendees. But "[a] person may be an invitee as to certain parts of the premises but not as to others", and a visitor's status is determined at the time of injury.[38] The volunteers were injured inside the 4-H booth, which was off-limits to festival-goers. There they were licensees of the Church.

We conclude that the volunteers were licensees as a matter of law. We hold that absent unusual circumstances not present in this case, a person on property to perform volunteer work for

---

[35] *Id.*

[36] *Id.* at 726.

[37] *Cowart v. Meeks*, 111 S.W.2d 1105, 1107 (Tex. [Comm'n Op.] 1938).

[38] *Burton Constr. & Shipbuilding Co. v. Broussard*, 273 S.W.2d 598, 602 (Tex. 1954).

a third party benefits the third party rather than the property owner and therefore is not the owner's invitee. Property owners owe invitees a high duty of care. The law requires landowners to inspect their premises and make them safe when someone visits for a commercial purpose—as the Michigan Supreme Court has explained, "the prospect of pecuniary gain is a sort of quid pro quo for the higher duty of care owed to invitees."[39] But when a visitor does not economically benefit the landowner, the law imposes on the owner the lesser duty associated with licensees.

**B**

The Church's duty to the volunteers was to "use ordinary care either to warn [them] of, or to make reasonably safe, a dangerous condition of which [it was] aware and the [volunteers were] not."[40] The jury found that the Church did not breach this duty.[41] The Families argue, and the court of appeals agreed, that the evidence overwhelmingly shows that the volunteers were injured by a propane fire. But the Families do not argue here, and no evidence in the record suggests, that the Church actually knew of any danger that a propane fire might break out in the 4-H booth,[42] an element of the Families' proof. The Families argue that the Church is liable to them because it

---

[39] *Stitt v. Holland Abundant Life Fellowship*, 614 N.W.2d 88, 95 (Mich. 2000).

[40] *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 385 (Tex. 2016) (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)).

[41] Specifically, the jury answered "no" when asked whether: 1) "the condition on the premises posed an unreasonable risk of harm"; 2) "[the Church] had actual knowledge of the danger"; 3) "[the volunteers] did not have actual knowledge of the danger"; and 4) "[the Church] failed to exercise ordinary care to protect [the volunteers] from the danger, by both failing to adequately warn [the volunteers] of the condition and failing to make that condition reasonably safe."

[42] While the Families do not argue in this Court that the Church was aware of the danger of a propane fire, they did argue in summation at trial that Lupe Gonzalez, the chairman of the festival, knew that the 4-H booth contained propane tanks that violated applicable safety laws. But Gonzalez testified only that he knew that the 4-H booth had at least one propane tank and that propane can be dangerous. Nothing in the record suggests that Gonzalez knew (or even had any way of knowing) whether the propane tank in the 4-H booth violated any laws or in some other way posed a special danger to volunteers working in the booth.

9

retained control over the 4-H booth when the fire occurred. But that control alone is no evidence that the Church knew that fire posed any danger.

We must sustain the jury's finding that the Church did not breach the duty it owed to the volunteers as licensees "unless the record conclusively establishes" that the Church did in fact breach its duty.[43] Because the evidence does not conclusively establish that the Church actually knew of some condition that created an unreasonable risk of harm to the volunteers, we have no basis on which to reject the jury's finding. Accordingly, we hold that the Families cannot recover against the Church on their premises-liability claim.

## III

The Families argue that the trial court committed reversible error in several respects, requiring reversal of the judgment for the Church and Heritage and a remand for a new trial. The court of appeals rejected their arguments.

## A

During summation, the Church's attorney said to the jury, "I submit to you that there are a couple of people who could have changed what happened here. And I mean, you can also find nobody's responsible. You can say this is a tragic accident, just like Jennifer Eveler said. Nobody's responsible. I mean, that's entirely possible too." The Families immediately asked the trial court to instruct the jury to disregard the statement. The trial court refused. The Families argue that counsel's statement improperly suggested to the jury that it could find that the fire in the 4-H booth

---

[43] *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017) (citing *Mo. Pac. R. Co. v. Limmer*, 299 S.W.3d 78, 84 n.30 (Tex. 2009); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001)).

was an "unavoidable accident", even though that defense had not been pleaded and no evidence supported it.

"[T]he law recognizes . . . that some accidents occur without anyone's negligence".[44] A jury may be instructed in an appropriate case that "[a]n unavoidable accident is 'an event not proximately caused by the negligence of any party to it.'"[45]

> The purpose of the unavoidable-accident instruction is to advise the jurors that they do not have to place blame on a party to the suit if the evidence shows that conditions beyond the party's control caused the accident. An instruction on unavoidable accident is most often used to inquire about the causal effect of some physical condition or circumstance such as fog, snow, sleet, wet or slick pavement, or obstruction of view, or to resolve a case involving a very young child who is legally incapable of negligence. But the instruction is not limited to only those circumstances—it merely informs the jury that it may consider causes of the occurrence other than the negligence of the parties.[46]

But counsel's argument did not point to conditions beyond the parties' control. Counsel told the jury they could "*find* nobody's responsible." That was exactly correct. Juries "are not required to find someone at fault."[47] The evidence in this 35-witness, 4-week trial was conflicting. The jury heard factual and expert testimony on all sides. The court of appeals "agree[d] with the Families that the evidence presented at trial shows that some party was negligent".[48] *Some*

---

[44] *Dillard v. Tex. Elec. Co-op.*, 157 S.W.3d 429, 433 (Tex. 2005) (quoting *Hill v. Winn Dixie Tex., Inc.*, 849 S.W.2d 802, 805 (Tex. 1992) (Hecht, J., dissenting)); *see also Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 757 (Tex. 2006) ("The truth is, sometimes accidents are no one's fault".).

[45] *Gunn v. McCoy*, 554 S.W.3d 645, 675 (Tex. 2018) (quoting *Reinhart v. Young*, 906 S.W.2d 471, 472 (Tex. 1995)).

[46] *Id.* (cleaned up).

[47] *Urista*, 211 S.W.3d at 757; *see also Dillard*, 157 S.W.3d at 433 (explaining that the *Texas Pattern Jury Charge* on negligence, which asks "whether 'the negligence, if any,' of particular persons proximately caused an occurrence", does not imply "that the occurrence *was* caused by *someone's* negligence" (emphasis in original)).

[48] 569 S.W.3d 686, 727 (Tex. App.—El Paso 2018).

11

evidence did, to be sure, but not *the* evidence. What the conflicting evidence showed in this hard-fought trial was a question for the jury, not the appellate court. And evidence of negligence did not preclude counsel from arguing to the jury that they could nevertheless "find nobody's responsible."

Counsel correctly stated the law when he told the jury that it was not required to find any party negligent, and the argument was well within the evidence. The court of appeals was incorrect in characterizing the argument as an "improper stray comment".[49] The trial court did not err by refusing to instruct the jury to disregard counsel's argument. It would have erred had it granted the Families' request for an instruction to do so.

**B**

The jury answered "no" when asked whether "the negligence, if any" of Heritage proximately caused the volunteers' injuries. The Families attack the legal sufficiency of this finding. They argue that the testimony of Bryan Diller, the 4-H officer who provided the propane tank used in the 4-H booth, establishes as a matter of law that Heritage filled the tank at issue.

The Families must carry a heavy burden to prevail in their legal sufficiency challenge. "When a party attacks the legal sufficiency of an adverse finding on an issue on which it bears the burden of proof, the judgment must be sustained unless the record conclusively establishes all vital facts in support of the issue."[50] "To conclusively establish [a] fact, the evidence must leave 'no room for ordinary minds to differ as to the conclusion to be drawn from it.'"[51] The Families have

---

[49] *Id.* at 729.

[50] *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017) (citing *Mo. Pac. R. Co. v. Limmer*, 299 S.W.3d 78, 84 n.30 (Tex. 2009); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001)).

[51] *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 235 (Tex. 2019) (quoting *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982)).

not met this burden. Diller testified that he was "absolutely certain" that he filled the tank at Denman Propane, a propane filling station owned by Heritage. However, neither Diller nor Heritage had receipts documenting this alleged transaction, and Juan Jurado, the only bottle filler working at Denman Propane in 2008, testified that he did not recognize Diller and had no memory of filling Diller's distinctive-looking gold tank. Typically, "evidence becomes conclusive (and thus cannot be disregarded) when it concerns physical facts that cannot be denied."[52] Moreover, jurors "are the sole judges of the credibility of the witnesses and the weight to give their testimony", and when they "choose to believe one witness and disbelieve another", appellate courts "cannot impose their own opinions to the contrary."[53] In the absence of physical evidence such as receipts, the jury was free to believe either Diller's testimony or Jurado's. Accordingly, the record does not conclusively establish that Heritage filled the propane tank at issue. We overrule the Families' legal sufficiency challenge.

## C

The Families challenge three rulings that the trial court made regarding expert witnesses: its decision to allow a defense expert to testify on the acoustic differences between grease and propane fires; its decision to allow a defense expert to present certain "demonstrative" evidence; and its refusal to allow the Families to comment on the defense's failure to call two of its retained experts. They also challenge the court's refusal to submit to the jury a series of negligence *per se* instructions based on Heritage's alleged violations of the Texas Administrative Code and its decision not to allow the Families' counsel to describe a National Fire Protection Association

---

[52] *City of Keller v. Wilson*, 168 S.W.3d 802, 815 (Tex. 2005).

[53] *Id.* at 819 (citations omitted).

publication and a United States Department of Transportation regulation as "the law of Texas" during closing argument.

After reviewing the record, we conclude that none of these rulings, made over the course of a month-long trial featuring testimony from 35 fact and expert witnesses, "probably caused the rendition of an improper judgment" or "probably prevented the petitioner from properly presenting the case to the appellate courts."[54] For this reason, even if the court erred in making any or all of these decisions, the errors would be harmless and therefore not reversible.[55]

*   *   *   *   *

The volunteers were on the Church's land to benefit 4-H, not the Church. Accordingly, the volunteers were licensees of the Church rather than invitees. And because the Families have not shown either that the evidence conclusively establishes that the Church breached the duty that it owed the volunteers as licensees or that the trial court otherwise committed reversible error, we reverse the court of appeals' judgment as to the Church, affirm its judgment as to Heritage, and render judgment that the Families take nothing.


                                           _____
                                           Nathan L. Hecht
                                           Chief Justice

**OPINION DELIVERED:** May 7, 2021

---

[54] TEX. R. APP. P. 61.1.

[55] *See id.*; *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 757 (Tex. 2006).

14